MILLER BREWING COMPANY, Plaintiff-Respondent-Petitioner,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Equal Rights Division, Defendant-Appellant,

Becky KOZERA, Defendant-Co-Appellant.

Supreme Court

*No. 94–1628. Oral argument April 29, 1997.—Decided June 6, 1997.*

(Also reported in 563 N.W.2d 460.)

26

For the plaintiff-respondent-petitioner there were briefs by *Ely A. Leichtling, Carmella A. Huser* and

*Quarles & Brady*, Milwaukee and oral argument by *Ely A. Leichtling*.

For the defendant-appellant the cause was argued by *Richard Briles Moriarty,* assistant attorney general with whom on the brief was *James E. Doyle*, attorney general.

For the defendant-co-appellant there was a brief and oral argument by *Michael J. Edmonds*, Milwaukee.

Amicus curiae brief was filed by *Marianne Goldstein Robbins, Leeann Gruwell Anderson* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.,* Milwaukee for the Wisconsin State AFL-CIO.

Amicus curiae brief was filed by *Patricia J. Meunier* and *Schneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer*, Milwaukee for the Wisconsin Federation of Nurses and Health Professionals.

Amicus curiae brief was filed by *Robert K. Sholl, Patrick D. Dolan* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, Milwaukee for the Wisconsin Manufacturers & Commerce.

Amicus curiae brief was filed by *Ann M. Barry, Jennifer S. Walther* and *Buchanan & Barry, S.C.*, Milwaukee for the Wisconsin State Council of the Society for Human Resource Management.

¶ 1.   N. PATRICK CROOKS, J.   Miller Brewing Company (Miller) seeks review of a published decision of the court of appeals[1] which reversed and remanded a judgment of the Circuit Court for Milwaukee County, Michael Guolee, Judge. The court of appeals held that

---

[1] *Miller Brewing Co. v. DILHR*, 203 Wis. 2d 380, 553 N.W.2d 837 (Ct. App. 1996).

Becky Kozera's (Kozera) claim under the Wisconsin Family and Medical Leave Act (FMLA),[2] is not preempted by § 301 of the federal Labor Management Relations Act (LRMA).[3] We agree that Kozera's state law claim is not pre-empted by federal law, and therefore affirm the decision of the court of appeals.

[2] The Wisconsin FMLA is located at Wis. Stat. § 103.10 (1987–88). Section 103.10 provides in relevant part:

(3) FAMILY LEAVE. (a)1. In a 12-month period no employe may take more than 6 weeks of family leave under par. (b)1 and 2.

. . . .

3. In a 12-month period no employe may take more than 8 weeks of family leave for any combination of reasons specified under par.(b).

(b) An employe may take family leave for any of the following reasons:

1. The birth of the employe's natural child, if the leave begins within 16 weeks of the child's birth.

. . . .

(5) PAYMENT FOR AND RESTRICTIONS UPON LEAVE. (a) This section does not entitle an employe to receive wages or salary while taking family leave or medical leave.

(b) An employe may substitute, for portions of family leave or medical leave, paid or unpaid leave of any other type provided by the employer.

All future references are to the 1987–88 Statutes unless otherwise indicated.

[3] Section 301 of the federal LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act. . .may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1988). All future references are to the 1988 Code unless otherwise indicated.

## I.

¶ 2.   The relevant facts are undisputed.[4] Miller employs Kozera as a laboratory technician. Kozera is a member of the laboratory technicians' bargaining unit at Miller, which is represented for purposes of collective bargaining by Brewery Workers Local 9, UAW (Amalgamated) AFL-CIO. The terms and conditions of Kozera's employment are governed by a collective-bargaining agreement (CBA) between the union and Miller.

¶ 3.   On February 9, 1990, Miller approved disability leave for Kozera during her pregnancy. Pursuant to the CBA, Kozera substituted her paid reserve sick leave for this disability leave. Miller expected Kozera to return to work on April 16, 1990, six weeks after the due date of her child. However, on March 12, 1990, Kozera verbally requested a six-week parental family leave under the Wisconsin FMLA,[5] to begin on April 16, 1990. Kozera also requested that, pursuant to the FMLA, she be allowed to substitute six-weeks of paid reserve sick leave for unpaid family leave. As of April 16, Kozera had 952 hours of paid reserve sick leave under the terms of the CBA.

¶ 4.   Miller granted Kozera a six-week parental leave. However, the CBA provided that employees could substitute paid reserve sick leave only when they were in fact sick and had submitted a doctor's note acceptable to Miller. Since Kozera was not sick, Miller denied her request for substitution. Miller had never

---

[4] Before the administrative law judge (ALJ), Kozera and Miller stipulated to the relevant underlying facts of this case.

[5] The federal Family Medical Leave Act was not in effect at the time Kozera's claim arose. *See* 29 U.S.C. § 2611–19 (1994 & Supp. 1995).

allowed an employee to use paid reserve sick leave for any reason except personal injury or illness.

¶ 5. On April 13, 1990, Kozera filed a complaint with the Department of Industry, Labor and Human Relations (DILHR), Equal Rights Division (ERD), alleging that Miller had violated her rights under the FMLA, Wis. Stat. § 103.10(5)(b). In order to successfully establish a violation of § 103.10(5)(b), Kozera was required to prove that: (1) she was covered by the FMLA at the time she requested the leave; (2) she requested a substitution for family leave; (3) Miller provided the type of leave requested;[6] (4) the substituted leave had accrued to her; and (5) Miller denied the substituted leave. *See Leher v. Consolidated Papers, Inc.*, 786 F. Supp. 1480, 1485 (W.D. Wis. 1992) (relying on decisions of DILHR interpreting the FMLA). Kozera and Miller in effect stipulated to elements one, two, and five; therefore, only elements three and four were in dispute.

¶ 6. On May 10, 1990, the ERD issued an initial determination finding probable cause to believe that Miller had violated the FMLA. Accordingly, on June 8, 1990, a hearing was held before an administrative law judge (ALJ) on the merits of Kozera's claim. The ALJ concluded that Miller had violated § 103.10(5)(b) by refusing to allow Kozera to substitute paid reserve sick leave for unpaid family leave, even though Kozera was not sick when she requested the leave. The ALJ ordered Miller to pay back pay, interest, and reasonable actual attorney's fees to Kozera. The ALJ did not make an explicit determination as to whether Kozera's

---

[6] An employer must provide leave that is definite and quantifiable in order for such leave to be available for substitution under the FMLA. *See Richland School Dist. v. DILHR*, 174 Wis. 2d 878, 895–96, 498 N.W.2d 826 (1993).

claim was federally pre-empted by § 301 of the LRMA, despite the fact that Miller raised this issue.

¶ 7.   On December 12, 1990, Miller petitioned the circuit court for judicial review of the ALJ's decision pursuant to Wis. Stat. § 227.52. The parties subsequently obtained a stay of the proceedings pending the outcome of *Richland School Dist. v. DILHR*, 174 Wis. 2d 878, 498 N.W.2d 826 (1993). *Richland* resolved the issue of whether Kozera could substitute paid sick leave even though she was not sick, since the court held that "sec. 103.10(5)(b) does not require that the employe satisfy the conditions of leave eligibility set forth in the collective bargaining agreement before substitution is allowed."[7] *Id.* at 898. Consequently, federal pre-emption was the only issue remaining before the circuit court.

¶ 8.   On April 20, 1994, the circuit court reversed the decision of the ALJ. In its memorandum decision, the circuit court relied on *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), in which the United States Supreme Court stated: "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* at 410 n.10. The circuit court also explained that in *Richland*, this court indicated that the FMLA cannot be the source of compensation for substitution. Therefore, the circuit court concluded that because the CBA is the source of compensation for substitution, Kozera's claim is founded directly on rights created by the CBA, and is substantially dependent upon an anal-

---

[7] Federal pre-emption was not at issue in *Richland* because the Richland School District is a political subdivision of the state, and therefore is not an "employer" within the meaning of the LMRA. *See* 29 U.S.C. §§ 142(3) & 152(2).

ysis of the CBA. Thus, the circuit court held that Kozera's claim was pre-empted under § 301.

¶ 9. Kozera and DILHR appealed pursuant to Wis. Stat. § 227.58. On July 9, 1996, the court of appeals reversed the circuit court's decision. The court of appeals indicated that § 301 pre-empts a state law claim only if adjudication of the claim would require interpretation of a collective-bargaining agreement. *Miller Brewing Co. v. DILHR*, 203 Wis. 2d 380, 387–88, 553 N.W.2d 837 (Ct. App. 1996) (quoting *Leher*, 786 F. Supp. at 1483–84). The court determined that, in this case, it would not need to interpret the CBA to analyze Kozera's claim because the CBA unambiguously provided for the type of leave that may be substituted under the FMLA. In addition, the court concluded that, under the unambiguous terms of the CBA, such leave had accrued to Kozera. The court stated: "Lifting this fact from this agreement does not require interpretation of the agreement." *Id.* at 390 (quoting *Leher*, 786 F. Supp. at 1485). Accordingly, the court of appeals held that Kozera's claim was not pre-empted under § 301. *Id.*

## II.

¶ 10. The pre-emptive effect of § 301 is a question of law. *International Ass'n of Machinists & Aerospace Workers, IAM Local 437 v. United States Can*, 150 Wis. 2d 479, 487, 441 N.W.2d 710 (1989), *cert. denied*, 493 U.S. 1019 (1990). Although this court generally is not bound by an agency's interpretation of a question of law, this court will defer to an agency's interpretation in certain situations. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996); *State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 699, 517 N.W.2d 449 (1994).

This court has identified three levels of deference or review which may be granted to an agency's conclusion of law: great weight deference, due weight deference, and *de novo* review. *UFE*, 201 Wis. 2d at 284; *Jicha v. DILHR*, 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992). *De novo* review applies if a legal question is presented and there is no real evidence of any special agency expertise or experience. *See Coutts v. Wisconsin Retirement Bd.*, 209 Wis. 2d 655, 562 N.W.2d 917 (1997). We conclude that DILHR has no special expertise or experience in determining questions of federal pre-emption, and therefore determine that *de novo* review is applicable here.[8]

### III.

### A.   GENERAL PRINCIPLES OF FEDERAL PRE-EMPTION

¶ 11.   The pre-emption doctrine is rooted in article VI of the United States Constitution, which is commonly referred to as the Supremacy Clause. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985). The question of whether federal law pre-empts state law is one of congressional intent. *Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 500 (1984). Federal law pre-empts state law in three situations: (1) where Congress explicitly mandates pre-emption of state law; (2) where Congress implicitly indicates an intent to occupy an entire field of regulation to the exclusion of state law; or, (3) where state law actually conflicts with federal law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293,

---

[8] In addition, DILHR did not make an explicit determination as to the issue of federal pre-emption in this case.

299–300 (1988); *Brown*, 468 U.S. at 501. The defendant bears the burden of establishing pre-emption. *Derby v. Brenner Tank, Inc.*, 187 Wis. 2d 244, 248, 522 N.W.2d 274 (Ct. App. 1994); *see also Buzzard v. Roadrunner Trucking, Inc.*, 966 F.2d 777, 779 (3d Cir. 1992).

¶ 12.   The case before us involves a question as to the extent of § 301 pre-emption. A court's interpretation of the scope of a statute's pre-emptive effect is guided by two principles. First, the U.S. Supreme Court has indicated that:

> [I]n all pre-emption cases, and particularly in those in which Congress has "legislated. . .in a field which the States have traditionally occupied," we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

*Medtronic, Inc. v. Lohr*, — U.S. —, 116 S. Ct. 2240, 2250 (1996) (internal citations omitted). Accordingly, there is a presumption against pre-emption. *See id.*[9] In particular, in the context of labor law, the Supreme

---

[9] In *Medtronic*, the Supreme Court used the words "assumption" and "presumption" interchangeably, as is demonstrated by the following quote:

> Although dissenting Justices have argued that this assumption should apply only to the question whether Congress intended any pre-emption at all, as opposed to questions concerning the scope of its intended invalidation of state law, we used a "presumption against the pre-emption of state police power regulations" to support a narrow interpretation of such an express command in *Cipollone*. That approach is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety.

*Medtronic, Inc. v. Lohr*, — U.S. —, 116 S. Ct. 2240, 2250 (1996) (internal citations omitted).

Court has recognized that "pre-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State."[10] *Lingle*, 486 U.S. at 412 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987)). Second, the Supreme Court has determined that "any understanding of the scope of a pre-emption statute must rest primarily on a 'fair understanding of congressional purpose.' " *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 530 n.27 (1992)).

### B.   SPECIFIC PRINCIPLES OF § 301 PRE-EMPTION

¶ 13.   Congress did not expressly indicate whether, or to what extent, it intended § 301 to pre-empt state law. *Lueck*, 471 U.S. at 208. However, when it first considered the question of § 301 pre-emption in *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962), the Supreme Court concluded that Congress intended "doctrines of federal labor law uniformly to prevail over inconsistent local rules."[11] *Id.* at 104. The

---

For a general discussion on the presumption against pre-emption, see Ronald D. Rotunda & John E. Nowak, 2 *Treatise on Constitutional Law: Substance & Procedure* § 12.4 (2d ed. 1992 & Supp. 1997).

[10] We acknowledge, however, that when pre-emption is based on the primary jurisdiction of the National Labor Relations Board, there is a presumption in favor of federal pre-emption. *See Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 502–03 (1984).

[11] The Supreme Court has determined that state and federal courts have concurrent jurisdiction of § 301 claims; however, a court must apply federal law in adjudicating such claims. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 n.2 (1988).

*Lucas Flour* Court explained the purposes of § 301 pre-emption as follows:

> [T]he subject matter of s 301(a) "is peculiarly one that calls for uniform law." The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. . . .

*Id.* at 103–04 (internal citations omitted). In addition, the Court indicated that § 301 pre-emption preserves the central role of arbitration in labor disputes, by ensuring that employees exhaust the grievance procedures set forth in a collective-bargaining agreement before bringing a claim in court. *See Lueck*, 471 U.S. at 219 (explaining that this "was one of the central reasons that underlay the Court's holding in *Lucas Flour*. . . ."). Accordingly, § 301 pre-emption ensures that common terms in collective-bargaining agreements are not given different interpretations in different jurisdictions, and promotes "the peaceable, consistent resolution of labor-management disputes." *Lingle*, 486 U.S. at 404.

¶ 14. In a series of decisions made after *Lucas Flour*, the Supreme Court has determined that the pre-emptive scope of § 301 is extensive. *See Livadas v. Bradshaw*, 512 U.S. 107, 122 n.16 (1994) ("Within its proper scope, § 301 has been accorded unusual pre-

emptive power."). However, the Supreme Court has recognized that § 301 pre-emption applies only where the purposes of such pre-emption will be fulfilled. As explained by the *Livadas* Court:

> [T]he pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement,' nor by parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.

*Id.* at 122–23 (internal citations omitted).

¶ 15.   Therefore, although the pre-emptive effect of § 301 is broad, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301. . . ." *Lueck*, 471 U.S. at 211. In particular, the Supreme Court has determined that "it would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212; *see also Livadas*, 512 U.S. at 123 (Section 301 does not "pre-empt nonnegotiable rights conferred on individual employees as a matter of state law. . . .").[12] Accordingly, the Supreme Court has held

---

[12] Such a nonnegotiable right, established independent of a collective-bargaining agreement, exists in this case. *See Richland School Dist. v. DILHR*, 174 Wis. 2d 878, 906, 498 N.W.2d 826 (1993) ("Even if there were a conflict between the collective bargaining agreement and FMLA, the latter would prevail."); *see also infra* 42–3.

that "an application of state law is pre-empted by § 301 of the [LMRA] **only if** such application requires the **interpretation** of a collective-bargaining agreement." *Lingle*, 486 U.S. at 413 (emphasis added). Likewise, the Court has emphasized that "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 123–24. A state law claim is "independent" if it "does not require **construing** the collective-bargaining agreement." *Lingle*, 486 U.S. at 407 (emphasis added).

¶ 16. In addition, the Court has stressed that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124. As the Seventh Circuit, applying the principles of *Lingle* and *Livadas*, has stated: "Therefore, when the collective bargaining agreement is merely a tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely pro forma, we can say with confidence that such consultation does not trigger § 301 preemption." *Loewen Group Int'l Inc. v. Habericheter*, 65 F.3d 1417, 1422 (7th Cir. 1995).

¶ 17. This court has similarly recognized such principles. In *International Ass'n of Machinists*, this court indicated that the test for § 301 pre-emption "is not esoteric, but practical—does the adjudication of the state-law claim depend on the **interpretation** of the collective-bargaining agreement?" 150 Wis. 2d at 492 (emphasis added). The court also determined that, under § 301, "[i]f the claim does not require **substantial interpretation** of a collective-bargaining

39

agreement, the application of federal law is not required." *Id.* at 493 (emphasis added).

## IV.

¶ 18.   In the present case, Miller argues that Kozera's state law claim under the FMLA is pre-empted by § 301 because adjudication of the claim requires interpretation of the CBA. Specifically, Miller points to *Richland,* in which the court determined:

> [T]he phrase 'leave. . .provided by the employer' refers to any type of leave that has **accrued** to the employe. Section Ind. 86.03, Wis. Adm. Code. Only those types of leave which an employment contract allows an employe to accumulate over time are available for substitution. Leave which is indefinite or which cannot be quantified at the time of the FMLA leave request is not 'leave provided by the employer' under FMLA.

174 Wis. 2d at 895–96 (emphasis original). Miller contends that we must interpret the CBA in order to determine whether, under the requirements set forth in *Richland,* Kozera's paid leave had accrued to her and was the type of leave available for substitution under the FMLA.

¶ 19.   Additionally, Miller stresses that the *Richland* court determined: "If the employe is to receive wages or salary while on FMLA leave, the authorization for such compensation must come from a source other FMLA." *Id.* at 895. Miller claims that, consequently, Kozera has no independent right to substitute paid sick leave under the FMLA, because the CBA provides the only possible authorization for compensation available for substitution. Miller contends that Kozera's claim therefore is pre-empted under § 301,

because it is "founded directly" on rights created by the CBA.[13]

¶ 20.   We reject Miller's arguments. Specifically, we conclude that interpretation of a disputed contract term or provision is not required in order to determine that Kozera had accrued paid leave that was definite and quantifiable, as required by *Richland*. The parties agree that, at the time she requested substitution, Kozera had 952 hours of paid reserve sick leave under the terms of the CBA. Therefore, the paid leave was clearly definite and quantifiable. Moreover, such leave had accrued to Kozera. Article VII, § 4(A) of the CBA provides in relevant part:

> Each employee shall be credited with a reserve of twenty (20) workdays' illness and injury leave with pay per contract year. . . .Any unused leave under this Section at the end of the contract year shall be accumulated and carried over into the succeeding contract year but the maximum leave to be so accumulated shall not exceed one-hundred-sixty (160) working days.

(R.8 at 44–45.) Therefore, the CBA unambiguously indicates that employees covered by the agreement, such as Kozera, shall accumulate paid leave over time. The mere need to refer to the plain language of the CBA to determine this fact does not require us to construe a disputed contract term. *See Livadas*, 512 U.S. at 124–25. As the *Livadas* Court emphasized: "[W]hen the

---

[13] The United States Supreme Court has indicated that "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' " *Lingle*, 486 U.S. at 410 n.10.

meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 124. Thus, since we need not interpret the CBA in order to determine that Kozera's paid leave had accrued to her and was the type of leave available for substitution under the FMLA, Kozera's claim is not pre-empted by § 301. *See id.* at 124–25. Further, because Kozera has established she accrued paid leave that was definite and quantifiable, she has established all the elements of her claim under Wis. Stat. § 103.10(5)(b).

¶ 21. Our determination regarding pre-emption is directly supported by *Leher v. Consolidated Papers, Inc.*, 786 F. Supp. 1480 (W.D. Wis. 1992), in which the plaintiff filed a claim with DILHR against her employer, claiming that the employer had violated the Wisconsin FMLA by refusing her request to substitute paid sick leave for unpaid family leave. The *Leher* court indicated that the plain language of the bargaining agreement between plaintiff's union and her employer provided that sick leave accrued to the plaintiff. The court concluded: "Lifting this fact from the agreement does not require interpretation of the agreement." *Id.* at 1485. Therefore, the court held that § 301 of the LMRA did not pre-empt the plaintiff's claim under the FMLA. *Id.*

¶ 22. In addition, we conclude that simply because the CBA provides the authorization for compensation available for substitution does not mean that Kozera's claim is "founded directly" on **rights created by** the CBA. Rather, Kozera's claim is directly founded on a right created by the FMLA—the right to substitute paid leave for unpaid family leave. *See Leher*, 786

F. Supp. at 1485 ("[P]laintiff's claim based on the [FMLA] is not a claim founded directly on rights created by the collective bargaining agreement. . . ."). In other words, Kozera does not assert that she has a right to substitution because of an understanding embodied in the CBA. In fact, Kozera could not make such an assertion, because the CBA clearly provides that an employee must be sick in order to use paid reserve sick leave. It therefore follows that Kozera's right to substitute paid reserve sick leave is not directly founded on rights created by the CBA. Instead, the Wisconsin legislature, by enacting the FMLA, has given workers such as Kozera the right to substitute accrued paid leave for unpaid family leave, even if the conditions of leave eligibility set forth in a collective-bargaining agreement are not met. *See Richland,* 174 Wis. 2d at 898.

¶ 23.   This right to substitution under the FMLA is a nonnegotiable right which the legislature has conferred upon individual employees. *See id.* at 906 ("Even if there were a conflict between the collective bargaining agreement and FMLA, the latter would prevail."). It would be inconsistent with congressional intent under § 301 to pre-empt this state statute, which establishes rights independent of a labor contract. *See Livadas,* 512 U.S. at 123; *Lueck,* 471 U.S. at 212. Therefore, the mere fact that the CBA provides the authorization for compensation available for substitution under the FMLA does not mean that Kozera's claim is pre-empted by § 301.

¶ 24.   Moreover, our decision does not frustrate the two main purposes which § 301 serves—ensuring that terms and provisions of collective-bargaining agreements are given uniform interpretations and preserving the central role of arbitration in labor disputes.

In particular, since adjudication of Kozera's claim does not require us to interpret or construe the CBA, we do not risk giving a contract term or provision a different and possible conflicting interpretation from that which is applicable under federal law. *See Leher*, 786 F. Supp. at 1485. In addition, no one has suggested that Kozera is attempting to avoid arbitration by bringing a claim under the FMLA. Thus, since pre-emption applies only to ensure that the purposes behind § 301 will not be frustrated, *see Livadas*, 512 U.S. at 122–23, pre-emption does not apply here.

¶ 25.   In summary, we conclude that Miller has failed to meet its burden of establishing that § 301 of the LMRA pre-empts Kozera's claim under the FMLA. First, Miller has not established that adjudication of Kozera's claim will require us to interpret a disputed term or provision of the CBA. Second, Miller has not proven that Kozera's claim is directly founded on rights created by the CBA. Third, Miller has not demonstrated that pre-emption will serve the purposes of § 301. Therefore, Miller has not overcome the presumption against pre-emption. We further conclude that Kozera has established the elements of her claim under Wis. Stat. § 103.10(5)(b). Thus, we affirm the decision of the court of appeals, which remands this case to the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed.