STATE of Wisconsin, Plaintiff-Appellant-Cross-
Respondent,

v.

Bruce PHILLIPS, Defendant-Respondent-Cross-
Appellant.†

Court of Appeals

*No. 99–3197–CR. Submitted on briefs June 12,
2000.—Decided July 18, 2000.*

## 2000 WI App 184

(Also reported in 617 N.W.2d 522.)

†Petition to review denied.

■

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the brief of *Mitchell W. Quick* and *Jorge A. Gomez* of, *Michael Best & Friedrich LLP* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. The State appeals the circuit court's order dismissing the State's information without prejudice. Bruce Phillips cross-appeals the court's determinations regarding its jurisdiction and binding Phillips over for trial. The appeal and cross-appeal pose three questions: (1) When is a preliminary examination completed for purposes of WIS. STAT. § 971.01(2);[1] (2) Is Wisconsin's prevailing wage law preempted by the Employee Retirement Security Act (ERISA); and (3) Does the evidence support Phillips's bindover for trial. We conclude that (1) the preliminary

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

examination is complete upon the court's decision to bind over; (2) ERISA does not preempt the prevailing wage law; and (3) Phillips was properly bound over for trial. Accordingly, we reverse the dismissal and affirm the circuit court's decisions on preemption and the bindover.

## BACKGROUND

¶ 2. Phillips is the president of B.P. Phillips Construction, Inc. Phillips Construction worked on local government construction projects between 1994–97, employing a number of laborers. Phillips allegedly failed to pay several workers the prevailing wage required under WIS. STAT. § 66.293. He also purportedly signed affidavits of compliance for those projects, certifying that prevailing wages had been paid to the laborers.

¶ 3. Phillips was charged with five misdemeanor counts of failing to pay the prevailing wage rate in violation of WIS. STAT. § 66.293, two felony counts for false swearing and one felony count of theft. A preliminary examination was commenced before a court commissioner on July 22, 1999. At the completion of testimony on August 19, the State requested a bindover and Phillips sought dismissal. The court commissioner withheld ruling and indicated that a written decision would be issued regarding the bindover and Phillips's motion. On September 16, the court commissioner issued the decision and order binding Phillips over and denying Phillips's motion. The decision and order were entered on September 17.

¶ 4. On September 24, Phillips moved to dismiss on the grounds that the State failed to timely file an information within thirty days of August 19. On September 29, Phillips also filed a motion challenging the

bindover and for reconsideration of his jurisdictional motion based on ERISA preemption. On that same day, the State filed an information. The circuit court arraigned Phillips on September 30 and set a date for hearing his motions.

¶ 5. The circuit court, after the hearing, denied Phillips's preemption motion and challenge to the bindover decision. It dismissed the information without prejudice, however, because it was not filed within thirty days after all the preliminary examination testimony was taken.

## DISCUSSION

1. When is the Preliminary Examination Completed?

¶ 6. The State claims that it timely filed the information. Its contention presents a question of statutory interpretation and application of the statute to undisputed facts, questions of law that we review de novo. *See Nelson v. McLaughlin*, 211 Wis. 2d 487, 495, 565 N.W.2d 123 (1997). The goal of statutory interpretation is to determine and give effect to the legislature's intent. *See Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997). "Statutes relating to the same subject matter may be considered in construing a statutory provision." *CH2M Hill, Inc. v. Black & Veatch*, 206 Wis. 2d 370, 378, 557 N.W.2d 829 (Ct. App. 1996).

¶ 7. We turn to WIS. STAT. § 971.01(2):

> The information shall be filed with the clerk *within 30 days after the completion of the preliminary examination* or waiver thereof except that the district attorney may move the court wherein the

information is to be filed for an order extending the period for filing such information for cause. Notice of such motion shall be given the defendant. Failure to file the information within such time shall entitle the defendant to have the action dismissed without prejudice. (Emphasis added.)

¶ 8. The question the parties pose is: When is the preliminary examination completed? The State contends that it is complete once the court renders a decision on bindover. Phillips, focusing on the word "examination," contends that the preliminary examination is complete after the last witness has been examined. We agree with the State.

■

¶ 9. "A preliminary examination is a hearing before a court for the purpose of determining if there is probable cause to believe a felony has been committed by the defendant." WIS. STAT. § 970.03(1). The statute therefore refers to the court's examination of the evidence presented to determine whether there is probable cause; not to the examination of witnesses. The preliminary examination is thus not complete until the court finishes scrutinizing the evidence and renders a decision on bindover.

■

¶ 10. Moreover, WIS. STAT. § 971.01(1) contemplates that a district attorney not make a decision on the charges to be filed in an information until the defendant has been bound over:

The district attorney shall examine all facts and circumstances connected with any preliminary examination touching the commission of any crime *if the defendant has been bound over for trial* and, subject to s. 970.03 (10), shall file an information

according to the evidence on such examination sub-scribing his or her name thereto. (Emphasis added.)

The legislature thus intended that a district attorney have thirty days from the bindover decision to examine the facts and circumstances to determine what to charge in the information. Here, the State filed the information within thirty days of the bindover decision. Accordingly, we reverse the circuit court's decision dismissing the information.

## 2. ERISA Preemption

¶ 11. Phillips contends that the court lacks jurisdiction over the charges against him because they are based on the prevailing wage law, which he claims is preempted by ERISA.[2] Federal preemption of a matter deprives a state court of subject matter jurisdiction. *See Dykema v. Volkswagenwerk AG*, 189 Wis. 2d 206, 210, 525 N.W.2d 754 (Ct. App. 1994). The preemptive effect of a federal law on Wis. Stat. § 66.293 presents a question of law. *See Miller Brewing Co. v. DILHR*, 210 Wis. 2d 26, 33, 563 N.W.2d 460 (1997). We reject Phillips's preemption argument.

---

[2] Phillips contends that all of the criminal counts should be dismissed because proof of all eight counts is dependent upon proof of the underlying prevailing wage claim obligations. Yet, two of the counts relate to false swearing. Criminal statutes of general application are specifically exempt from ERISA preemption. *See* 29 U.S.C. § 1144(b)(4). Nowhere does he explain why those counts would be preempted even if the Wis. Stat. § 66.293 charges were. In any event, we need not consider the issue because we determine that ERISA does not preempt § 66.293.

¶ 12. Wisconsin's prevailing wage law for municipal projects is set forth in WIS. STAT. § 66.293. The prevailing wage rate is defined in subsec. (1)(g) as:

> [T]he hourly basic rate of pay, plus the hourly contribution for health insurance benefits, vacation benefits, pension benefits and any other bona fide economic benefit, paid directly or indirectly, for a majority of the hours worked in the trade or occupation on projects in the area.

¶ 13. Under WIS. STAT. § 66.293(3), every local government unit, before making a contract, shall apply to the Department of Workplace Development to determine the prevailing wage rate. Covered employees are to be paid the prevailing wage rate.[3] *See* WIS. STAT. § 66.293(4). A contractor only has to pay the total prevailing wage. The contractor has the choice to pay the prevailing wages entirely as salary or as a combination of salary and benefits. *See* WIS. ADMIN. CODE § DWD 290.04(1). The regulations also impose recordkeeping requirements upon the contractor. *See* WIS. ADMIN. CODE ch. DWD 290.

¶ 14. ERISA is a comprehensive federal statute that regulates employee pension and welfare plans. *See* 29 U.S.C. §§ 1001–1461. Congress enacted ERISA "to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 834 (1997). It imposes participation, funding, and vesting requirements for pension plans and sets uniform standards regarding reporting,

---

[3] WISCONSIN STAT. § 66.293(4) provides in part:

> [E]mployes shall be paid the prevailing wage rate determined under sub. (3) and may not be permitted to work a greater number of hours per day or per calendar week than the prevailing hours of labor determined under sub. (3), unless they are paid for all hours worked in excess of the prevailing hours of labor at a rate of at least 1.5 times their hourly basic rate of pay.

disclosure, and fiduciary responsibility. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990). ERISA also provides exclusive remedies for an employer's failure to make fund contributions. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

¶ 15. To guarantee uniformity in the enforcement of employee benefit plans by avoiding a multiplicity of regulation, ERISA provides that it "supersede[s] . . . [s]tate laws [that] relate to . . . employee benefit plan[s]." 29 U.S.C. § 1144(a). The incidence of ERISA preemption turns on the parameters of "relate to." The phrase is not self-defining, and the Supreme Court has concluded that as used in ERISA's preemption provision, "relate to" cannot be read literally. "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course . . . ." *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995).

¶ 16. The Supreme Court has devised a disjunctive test to determine whether a law relates to ERISA: "A law relate[s] to a covered employee benefit plan for purposes of § 514(a) if it [1] has a connection with or [2] a reference to such a plan." *California Div. of Labor Stds. Enforce. v. Dillingham*, 519 U.S. 316, 324 (1997) (citations omitted). Earlier decisions portrayed the scope of ERISA preemption as clearly expansive and therefore liberally interpreted the test. *See id.* Recently, the Court has been more restrictive.

¶ 17. Although the Court still examines whether the state law has a "connection with" or "reference to" ERISA, it has emphasized the "starting presumption that Congress does not intend to supplant state law." *Travelers*, 514 U.S. at 654. The Court has also warned that unless congressional intent to preempt clearly

appears, ERISA will not be deemed to supplant state law in areas traditionally regulated by the states. *See Dillingham*, 519 U.S. at 325. These cases signaled a significant analytic shift, abandoning strict textualism in favor of an approach consistent with ordinary field and conflict preemption principles.[4] We nevertheless examine whether the prevailing wage law has a "connection with," or "refers to" ERISA because the Court has not yet explicitly abandoned that analytic framework.

## A. "Connection with"

¶ 18. Phillips claims that WIS. STAT. § 66.293 has a connection with ERISA because it imposes administrative burdens on the employer by dictating recordkeeping, reporting and compliance requirements. He also asserts that it controls the establishment, structure, and administrative requirements of ERISA governed plans. We disagree.

---

[4] Indeed, in a concurrence to *California Div. of Labor Stds. Enforce. v. Dillingham*, 519 U.S. 316 (1997), Justice Antonin Scalia, joined by Justice Ruth Bader Ginsburg, wrote, "I think it accurately describes our current ERISA jurisprudence to say that we apply ordinary field pre-emption, and, of course, ordinary conflict pre-emption. [A]nd except as establishing that, 'relates to' is irrelevant." *Id.* at 336 (Scalia, J., concurring). In *Boggs v. Boggs*, 520 U.S. 833 (1997), another ERISA preemption case decided later the same term, the Court relied solely on conflict preemption principles to resolve the case. *See id.* at 840. The majority found it unnecessary to "inquire whether the statutory phrase 'relate to' provides further and additional support for the preemption claim." *Id.* The Court also suggested that if conflict preemption had not resolved the case, it would have considered whether the law was preempted under field preemption principles. *See id.*

¶ 19. We determine whether there is a connection between ERISA and WIS. STAT. § 66.293 by looking "to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," *Travelers*, 514 U.S. at 656, and to the nature of the effect of § 66.293 on ERISA plans. *See Dillingham*, 519 U.S. at 325.

¶ 20. Congress stated ERISA's objectives: To "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies . . . ." 29 U.S.C. § 1001(b). Achieving this end requires the avoidance of "a multiplicity of regulation" and, concomitantly, the creation of a climate that "permit[s] the nationally uniform administration of employee benefit plans." *Travelers*, 514 U.S. at 657.

¶ 21. First, we conclude that Wisconsin's prevailing wage law is one that Congress understood would survive. The prevailing wage law has a long history, existing in one form or another since 1933. *See* Laws of 1933, ch. 95. Wages are a traditional subject of state concern. *See Massachusetts v. Morash*, 490 U.S. 107, 119 (1989). *Dillingham*, while addressing California's apprenticeship training program, also commented generally about prevailing wage laws:

> The wages to be paid on public works projects and the substantive standards to be applied to apprenticeship training programs are, however, quite remote from the areas with which ERISA is expressly concerned—reporting, disclosure, fiduciary responsibility, and the like. A reading of [29 U.S.C. § 1144(a)] § 514(a) resulting in the pre-emption of traditionally state-regulated substantive law

in those areas where ERISA has nothing to say would be unsettling. Given the paucity of indication in ERISA and its legislative history of any intent on the part of Congress to pre-empt state apprenticeship training standards, or state prevailing wage laws that incorporate them, we are reluctant to alter our ordinary assumption that the historic police powers of the States were not to be superseded by the Federal Act. Accordingly, as in *Travelers*, we address the substance of the California statute with the presumption that ERISA did not intend to supplant it.

*Id.* at 331–32 (citations omitted).

¶ 22. WISCONSIN STAT. § 66.293, on its face, in no way inhibits the accomplishment of ERISA's overall goals. Contrary to Phillips's assertion, the prevailing wage law only requires the payment of wages. It does not require either payment of or contribution toward any fringe benefit. It mentions fringe benefit contributions only to the extent that hourly contributions toward these benefits are part of the formula used in calculating the hourly prevailing wage rate and whether an employer has paid the total prevailing wage.[5]

¶ 23. Like California's apprenticeship program in *Dillingham*, WIS. STAT. § 66.293 does not bind ERISA plans to anything or require an employer to establish an ERISA benefit plan, much less any plan. If an employer chooses to provide no benefits, it is not precluded from obtaining work on public projects; it merely has to pay the benefit portion of the prevailing wage as salary. As such, § 66.293's impact on ERISA is neutral.

---

[5] The structure is similar to that Congress used in the Davis-Bacon Act. *See* 40 U.S.C. § 276a-c.

¶ 24. Nor does WIS. STAT. § 66.293 interfere with the national administration of employee benefit plans. Although it creates some administrative burdens on contractors, those burdens exist regardless whether the contractor has an ERISA plan. Moreover, regarding uniformity, there is no evidence that § 66.293's effects differ in kind from those that would exist in its absence. Prevailing wages in different states and even in different areas of a state may vary substantially. *See Dillingham*, 519 U.S. at 332 n.10.

¶ 25. Discerning no impermissible connection, we turn to the second branch of the ERISA preemption analysis: Whether WIS. STAT. § 66.293 refers to covered employee benefit plans so directly as to justify preemption.

B. "Reference to"

¶ 26. Phillips asserts that prevailing wage law impermissibly refers to ERISA because the existence of ERISA is essential to its operation for two reasons. First, he claims that the prevailing wage law "requires contractors to pay a specified amount of fringe benefits [and] [i]n so doing acts immediately upon ERISA plans." Second, Phillips notes that the prevailing wage law uses language virtually identical to that found in ERISA and uses ERISA standards in interpreting its regulations. The *Dillingham* Court clarified that a state law "refers to" ERISA where the law acts "immediately and exclusively" upon ERISA plans or the "existence of ERISA plans is essential to the law's operation." *Id.* at 325. We therefore reject Phillips's contentions

¶ 27. WISCONSIN STAT. § 66.293 does not act immediately or exclusively upon ERISA plans. Again, § 66.293 does not mandate that employers provide ben-

efits; it only requires that the total prevailing wage be paid. The law does not require an employer to provide any fringe benefits at all, much less set the amount an employer must contribute to any given fund.

¶ 28. We also reject Phillips's assertion that the existence of ERISA plans is essential to WIS. STAT. § 66.293's operation. The Department of Workforce Development's (DWD) administrative rules mention ERISA plans, confirming that in calculating the wages to be paid hourly, contributions for fringe benefits made to a "bona fide fund, plan or program" may be considered part of the formula. *See* WIS. ADMIN. CODE § DWD 290.01(10)(b). The explanatory notes to that section observe that:

> The phrase, "fund, plan or program" is intended merely to recognize the various types of arrangements commonly used to provide economic and fringe benefit through employer contributions. In interpreting this phrase, the department will be guided by the experience of the United States department of labor and United States Treasury department in administering the Employe Retirement Income Security Act of 1974, of the U.S. department of labor in administering other related programs, and of the Wisconsin state insurance commissioner in administering employe welfare funds under ch. 641, Stats.

The language concerning plans is not ERISA-specific, but incorporates any bona fide plan.[6] While recogniz-

---

[6] The regulations credit an employer for:

[M]aking payments or incurring costs for bona fide economic or fringe benefits a) identical to, or of the same type as the ones found prevailing by the department and included in the wage determination, or b) not of the type found prevailing by the department, but filed with and regulated by either the United States secretary of

ing ERISA plans and other arrangements, the prevailing wage law maintains neutrality toward which plans an employer chooses. Merely acknowledging the various arrangements and indicating that the experience of relevant federal agencies will guide the administration of the prevailing wage law does not make ERISA plans essential to WIS. STAT. § 66.293's operation.

¶ 29. Furthermore, the statute treats fringe benefit contributions in exactly the same manner as it treats salary payment. WISCONSIN STAT. § 66.293 neither imposes requirements on ERISA plans nor exempts such plans from otherwise applicable statutory provisions. In operation, therefore, the statute comports fully with ERISA's objectives. Nor does § 66.293 dictate the form a covered plan may take, specify the mode or manner of plan administration, or jeopardize the sort of uniformity that Congress aspired to achieve. We thus conclude that § 66.293 does not impermissibly refer to ERISA.

¶ 30. To sum up, WIS. STAT. § 66.293, gauged by the principles embodied in recent Supreme Court case law, neither singles out ERISA plans for special treatment nor depends on their existence as an essential part of its operation. Rather, the statute is "indifferent to . . . ERISA coverage." *Dillingham*, 519 U.S. at 328. It is properly classified, therefore, as "one of 'myriad state

---

labor under the Employee Retirement Income Security Act of 1974, or state of Wisconsin commissioner of insurance under ch. 641, Stats., or by a combination thereof. Before an employer can be given credit for any other unfunded economic or fringe benefit plan, the employer must supply a copy of the plan to the department and comply with all of the other provisions of s. DWD 290.01 (10) (c).

WIS. ADMIN. CODE § DWD 290.04.

laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 815 (1997). Thus, it does not trigger preemption. *See Travelers*, 514 U.S. at 656.

¶ 31. Moreover, our decision follows other jurisdictions that hold that ERISA does not preempt prevailing wage statutes that consider the amount of usual benefits in computing the total prevailing wage, but do not require that employers actually make such contributions. *See Associated Bldrs. & Contractors v. Perry*, 115 F.3d 386 (6th Cir. 1997); *Burgio & Campofelice, Inc. v. NYS Dep't of Labor*, 107 F.3d 1000 (2d Cir. 1997); *WSB Elec. v. Curry*, 88 F.3d 788 (9th Cir. 1996); *Minnesota Ch. of Assoc. Bldrs. & Contractors v. Minnesota Dep't of Labor & Indus.*, 47 F.3d 975 (8th Cir. 1995); *Keystone Ch., Assoc. Bldrs. & Contractors v. Foley*, 37 F.3d 945 (3d Cir. 1994); *Ironworkers Dist. Council v. Woodland Park Zoo Planning & Develop.*, 942 P.2d 1054, 1056–59 (Wash. App. 1999).

¶ 32. Each of these cases holds that prevailing wage statutes that consider the amount of usual benefits but do not require the establishment of benefit programs or benefit payments are not preempted by ERISA because they regulate wages, not benefits. Like the prevailing wage statutes in the above cases, Wisconsin's statute does not prescribe the type of benefit plans or amount of contributions. Most importantly, the employer can comply with the prevailing wage statute without any ERISA plan whatsoever.

¶ 33. The various authorities Phillips cites are inapposite.[7] First, they predate the Supreme Court's decisions in *Travelers* and *Dillingham,* which evince the Court's more pragmatic approach to ERISA preemption. Second, several of the cases involve prevailing wage laws that required payment of specific amounts as benefits. *See, e.g., GE v. New York State Dept. of Labor,* 891 F.2d 25 (2nd Cir. 1989); *Construction & Gen'l Laborers' Council v. James McHugh Constr.,* 596 N.E.2d 19 (Ill. App. 1992).

¶ 34. Phillips also cites a law review comment that suggests Wisconsin's prevailing wage law is preempted by ERISA. *See* Bradley C. Fulton, *Wisconsin's Prevailing Wage Laws: Why They Have Been Preempted By The Employee Retirement Income Security Act,* 80 MARQ. L. REV. 269 (1996). The author states that the district court's decision in *Associated Bldrs. & Contractors v. Perry,* 869 F. Supp. 1239 (E.D. Mich. 1994), is controlling because Michigan's law most closely resembles Wisconsin's law. *See* 80 MARQ. L. REV., *supra* at 273. The district court's decision, however, was reversed on appeal at 115 F.3d 386 (6th Cir. 1997). Thus the state law most closely resembling Wisconsin's was held not preempted by ERISA.

[7] Phillips refers us to: *City of Des Moines v. Master Bldrs.,* 498 N.W.2d 702 (Iowa 1993); *Construction & Gen'l Laborer's Dist. Council v. James McHugh Constr.,* 596 N.E.2d 19 (Ill. App. 1992); *GE v. New York State Dept. of Labor,* 891 F.2d 25 (2d Cir. 1989); *National Elevator Industry v. Calhoun,* 957 F.2d 1555 (10th Cir. 1992); and *United Wire, Metal & Machine Health & Welfare Fund v. Morristown Mem'l Hosp.,* 995 F.2d 1179 (3d Cir. 1993).

### 3. The Bindover

¶ 35. Phillips claims that the preliminary examination evidence was insufficient to support the bindover. He makes a number of contentions regarding each felony count.

¶ 36. A defendant shall be bound over for trial when the evidence at the preliminary examination is sufficient to establish probable cause that a felony was committed and that the defendant probably committed it. *See* WIS. STAT. § 970.03(1). A court is not required to state the specific felony committed, nor is the court limited to considering whether the defendant committed the specific felony charged in the complaint. *See State v. Burke*, 153 Wis. 2d 445, 456, 451 N.W.2d 739 (1990). The court may not choose between competing facts or inferences, but must bind a defendant over for trial when there exists a set of facts that supports a reasonable inference that the defendant probably committed a felony. *See State v. Dunn*, 121 Wis. 2d 389, 393, 396–97, 359 N.W.2d 151 (1984).

¶ 37. On review our examination is de novo. We review the record ab initio and decide, as a matter of law, whether the evidence constitutes evidence of probable cause. *See id.* at 398–99. In our review, we examine only whether probable cause exists to believe Philips committed a felony, we need not examine whether probable cause exists to believe Phillips committed each felony charged. *See Burke*, 153 Wis. 2d at 456–57.

¶ 38. Count eight of the amended complaint charged Phillips with felony theft in connection with the property of Randall Hermans. The State's theory was that Hermans, while in Phillips's employ, had

asked for but was not paid the prevailing wage. There-fore, according to the State, Phillips intentionally retained monies belonging to Hermans.

¶ 39. Phillips contends that the preliminary examination evidence was insufficient to bind him over on this charge because the State did not prove that he retained property without Hermans's consent. He contends that to establish a lack of consent, the evidence must demonstrate that consent was not due to one of the factors listed in WIS. STAT. § 939.22(48)(a)–(c).[8] We are unpersuaded.

¶ 40. "Without consent" under WIS. STAT. § 939.22(48) also means "no consent in fact." Hermans testified that after he worked "on the Goodman project," he confronted Phillips and told him that he was not receiving the prevailing wage rate. Phillips told him that "he wasn't going to put me all the way up there" and gave Hermans a raise of "a couple dollars." Hermans also testified that he brought up the issue of his dissatisfaction with the wages he earned in 1994 with Phillips "a few times throughout the years." There was thus sufficient evidence at the preliminary exami-

---

[8] WISCONSIN STAT. § 939.22(48) provides:

"Without consent" means no consent in fact or that consent is given for one of the following reasons:

 (a) Because the actor put the victim in fear by the use or threat of imminent use of physical violence on the victim, or on a person in the victim's presence, or on a member of the victim's immediate family; or

 (b) Because the actor purports to be acting under legal authority; or

 (c) Because the victim does not understand the nature of the thing to which the victim consents, either by reason of ignorance or mistake of fact or of law other than criminal law or by reason of youth or defective mental condition, whether permanent or temporary.

nation to show that Phillips probably retained Hermans's money without consent.

■

¶ 41. Phillips next claims that the State did not prove the amount of money that he allegedly withheld from Hermans. The record belies Phillips's contention. Hermans testified as to the hours he worked, what his jobs were and what he was paid. Hermans's check stubs recording his pay and hours were introduced into evidence. The prevailing wage rate determination for the Goodman project was also introduced into evidence. From this evidence, the court could determine the amount of money owed to Hermans probably exceeded $11,000.[9] Therefore, probable cause exists to believe a felony was committed, and it is probable that Phillips committed it.

¶ 42. Because we determine that probable cause exists to believe that Phillips committed a felony, we need not address his arguments regarding the false swearing counts. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (only dispositive issues need be addressed).

## CONCLUSION

¶ 43. We determine that (1) the preliminary examination is complete upon the court's rendering a bindover decision and therefore the information was timely filed; (2) ERISA does not preempt the prevailing wage law, WIS. STAT. § 66.293; and (3) Phillips was properly bound over for trial. Accordingly, we reverse

---

[9] Phillips complains that a nonexpert testified to the total amount of wages withheld from Goodman. We find no merit to the contention because, as noted, the court could determine the amount due based on the other information provided.

the dismissal and affirm the circuit court's decisions on preemption and the bindover.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.