Ben **EDWARDS**; Walter Huber, Jr.; Rudy Hernandez; Ted Frye; Raymond Sowles; James Zaideman; Brad Bennett; Freeman Bragdon; Richard Simmons; and Gerald Wheeler, **Appellants (Plaintiffs Below),**

v.

**BETHLEHEM STEEL CORPORATION, a foreign corporation; FLR Company, Inc., a foreign corporation; and Unknown Owners and Claimants, Appellees (Defendants Below).**

No. 64A04–8903–CV–077.

Indiana Court of Appeals, Fourth District.

May 31, 1990.

Rehearing Denied Aug. 13, 1990.

---

Richard J. Puchalski, Doss, Puchalski & Keenan, Ltd., Chicago, Ill., Steve H. Tokarski, Tokarski and Anast, Schererville, for appellants.

Larry G. Evans, Katharine E. Gerken, Hoeppner, Wagner & Evans, Valparaiso, for appellees.

CHEZEM, Presiding Judge.

### Case Summary

Plaintiffs/Appellants, Ben Edwards, et al., appeal the granting of Defendants/Appellees, Bethlehem Steel Corporation's, et al., motion for summary judgment. The trial court held that Appellants could not recover under the Indiana mechanic's lien statute because that statute was preempted by The Employees Retirement Income Security Act (ERISA). We affirm in part and remand for further proceedings.

### Issues

I. Whether ERISA preempts Indiana's mechanic's lien statute regarding a claim brought to collect unpaid wages and fringe benefits owed to employees.

II. Whether this cause may be adjudicated in an Indiana trial court.

### Facts

Edwards, et. al., (Laborers) are laborers who entered into a collective bargaining agreement which stated that certain fringe benefits would be paid, on behalf of Laborers, by their employer, FLR Company, into three funds. Subsequent to this agreement, FLR contracted to perform construction at a Bethlehem Steel plant located on Bethlehem property. Laborers are also members of the International Association of Bridge Structural and Ornamental Iron Workers, Local 395; Laborers performed the construction work on the Bethlehem Steel plant as employees of FLR.

FLR filed bankruptcy and failed to pay certain wages and fringe benefits owed to Laborers resulting from construction work performed at the Bethlehem plant. On June 14, 1985, Laborers, Local 395, and the three fringe benefit funds filed a notice of intention to take a lien against Bethlehem, and on March 4, 1986, they filed a complaint to foreclose the mechanic's lien held against Bethlehem.

Bethlehem filed a motion to dismiss and alternatively a motion for summary judgment. On October 2, 1986, the Porter Circuit Court granted Bethlehem's motion for summary judgment against Local 395 and the three fringe benefit funds, holding that Indiana's mechanic's lien statute did not extend to fringe benefit funds established under a collective bargaining agreement. Laborers' case remained pending at the time.

On January 12, 1988, this Court affirmed the trial court's decision regarding Local 395 and the three fringe benefit funds. Subsequently, Laborers moved for summary judgment on the issue of Bethlehem's liability regarding Laborers' right to a mechanic's lien. Bethlehem also moved for summary judgment. The trial court granted Bethlehem's motion for summary judgment, holding that Laborers' mechanic's lien claims were preempted by ERISA. In addition, the trial court denied Laborers' motion for summary judgment.

### Discussion and Decision

When reviewing a motion for summary judgment, we apply the same standard as employed by the trial court. Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, admissions, affidavits and testimony show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Howard v. H.J. Ricks Constr. Co., Inc.* (1987), Ind.App., 509 N.E.2d 201, *reh. denied, trans. denied.*

Laborers contend in their motion to correct error that ERISA does not preempt Ind.Code 32–8–3–1, the mechanic's lien statute, as the statute is invoked here. We disagree.

This Court dealt with this case earlier in *Edwards v. Bethlehem Steel Corp.* (1988), Ind.App., 517 N.E.2d 430, where it noted that, even though Local 395 and the three fringe benefit funds could not pursue a mechanic's lien, Laborers were not restrained from pursuing a mechanic's lien for wages denied, including the value of the fringe benefits denied. *See Edwards* 517 N.E.2d at 433. However, in that opinion, the possible ERISA preemption as it relates to the laborers' mechanic's lien was not decided.

■ We agree with *Edwards* dicta that I.C. 32–8–3–1 provides the laborers with a remedy when they have not been paid wages due:

That ... laborers and all other persons performing labor ... may have a lien separately or jointly upon the house, ... or other building, ... which they may

have erected, altered, repaired, ... or for which they may have furnished materials ... and, on the interest of the owner of the lot or parcel of land on which it stands or with which it is connected to the extent of the value of any labor done, material furnished, or either, ... and all claims for laborers employed ...

*Id.*

■ It is clear that Laborers here are "laborers" under I.C. 32–8–3–1, and thus are eligible to exercise their lien rights to enforce a mechanic's lien to collect their wages only. The next question is whether Indiana's mechanic's lien statute is preempted by the federal law ERISA, as it applies to the fringe benefits provided in the Laborers' negotiated labor contract.

As we review this case, we note that Indiana state courts are bound by the federal courts' interpretation and operation of federal legislation. *See Voelkel v. Tohulka* (1957), 236 Ind. 588, 141 N.E.2d 344, 347. In addition, the United States Supreme Court is the final authority on the interpretation of federal statutes. *Miller v. Mercantile National Bank of Hammond* (1955), 234 Ind. 202, 125 N.E.2d 720, 723. Because no Indiana law regarding ERISA preemption of a mechanic's lien exists, we turn to the language of ERISA, federal case law, and other states' laws.

It is interesting to note that in the initial appeal, *Edwards, supra,* the three fringe benefit funds stated in their brief that the funds here are "employee benefit plans," governed by ERISA.

29 U.S.C. § 1144 sets out ERISA's preemption powers:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or thereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

ERISA was created to treat employee benefits uniformly; the main goal was to

protect the employee from losing anticipated benefits. 29 U.S.C. § 1001(a).

In *Massachusetts v. Morash*, — U.S. —, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989), the Supreme Court addressed employees' claims that vacation benefits due them would fall under ERISA and thus preempt a state criminal statute. The Court held that the type of vacation benefits provided by the employer did not fall within ERISA, and therefore ERISA did not preempt the state law. *Id.* 109 S.Ct. at 1676.

*Morash* is clearly distinguishable from the facts in the case at hand. In *Morash*, the vacation benefits were paid out of the employer's general funds and not based on any contingency. Here, the vacation benefits and the other fringe benefits were to be paid out of funds set aside in three separate funds specifically to inure to the laborers. "... [T]he creation of a separate fund to pay employees' vacation benefits would subject a single employer to the regulatory provisions of ERISA." *Id.* at 1672. The funds as described here fit this description, and under the *Morash* rule, the funds fall under the provisions of ERISA.

The Supreme Court also addresses the preemptive power of ERISA in *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). While *Pilot Life* speaks to a different state statute than we are confronted with here, the language and reasoning the Court used in discussing ERISA's preemption power are applicable:

> To summarize the pure mechanics of the provisions quoted above: If a state law 'relate[s] to ... employee benefit plan[s],' it is pre-empted.

> The question whether a certain state action is pre-empted by federal law is one of congressional intent. 'The purpose of Congress is the ultimate touchstone.' We have observed in the past that the express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'

> The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected those provisions in favor of the present language, and indicated that section's pre-emptive scope was as broad as its language.

> The conclusion that [Section 1132(a)] was intended to be exclusive is supported, first, by the language and structure of the civil enforcement provisions, and second, by legislative history in which Congress declared that the pre-emptive force of [1132] was modeled on the exclusive remedy provided by 301 of the Labor–Management Relations Act, 61 Stat. 156, 29 U.S.C. § 185.

> The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA–plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

> The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive. This conclusion is fully confirmed by the legislative history of the civil enforcement provision.

*Id.* 107 S.Ct. at 1551–1557.

We follow the reasoning in *Pilot Life*. When a state statute relates to or interferes with ERISA, the statute will be preempted. Here, the mechanic's lien statute relates to ERISA: If Laborers were allowed to recover wages and fringe benefits from Bethlehem, then FLR and the fringe benefit funds would be affected; they would either have no further obligation to pay Laborers, or Laborers could receive a double payment windfall, provided FLR or the funds paid Laborers at some future time. Even though I.C. 32–8–3–1 does not specifically address welfare benefit plans, ERISA may still preempt it, as ERISA may preempt any state law with which it conflicts.

Laborers are attempting to use the mechanic's lien statute to enforce conditions of their fringe benefits. In *CSCAC v. El Capitan Development Co.* (1988), 210 Cal. App. 1052, 243 Cal.Rptr. 132 (review granted, 753 P.2d 1, 246 Cal.Rptr. 209), a case similar to the one at hand, the California Court of Appeals held that the state's mechanic's lien law may not be used to supplement or supplant the civil enforcement scheme developed under ERISA. The court in *El Capitan* had, as do we, an expansive interpretation of the preemption powers of ERISA.

*El Capitan* involved a mechanic's lien statute which was used to collect fringe benefit payments owed to an express trust fund established pursuant to a collective bargaining agreement. Here, there also were funds formed in accordance with an express collective bargaining agreement. In *El Capitan,* the laborers performed construction work on real property and were owed wages and fringe benefits; the employer failed to make contributions as agreed. Because the unpaid contributions represented work performed on El Capitan property, CSCAC alleged that a mechanic's lien could be placed upon the real property pursuant to a state statute. CSCAC sought foreclosure as a means of collecting the trust fund contributions still owed. Similarly, foreclosure was sought in this case as a means of collecting the value of the unpaid wages and fringe benefits.

■ Laborers also contend that the fringe benefits were provided as mere "benefits" and not under a "benefit plan." We disagree. ERISA defines a "benefit plan" as "any plan, fund, or program which was ... established or maintained by an employer or by an employee organization or by both, ... for the purpose of providing for its participants ... (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs...." 29 U.S.C. § 1002(1).

ERISA details its own coverage:

Except as provided in subsection (b) of this section ... this subchapter shall apply to any employee benefit plan if it is established or maintained—

(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

(3) or both.

29 U.S.C. § 1003.

The "benefits" here were provided by the employer, FLR, and by an organization representing employees, Local 395, pursuant to a collective bargaining agreement. The benefits were provided under a "plan" as described in ERISA, and ERISA preempts Indiana's mechanic's lien statute.

After review, we hold that when a state statute interferes with one of the functions of ERISA, the statute is preempted, whether or not the state statute explicitly mentions an employee benefit plan because the effect is the same: interference with the purpose of ERISA.

## II

■ The next issue is whether the state trial court has concurrent jurisdiction with the federal courts. Laborers maintain that even if their claim falls under ERISA it may be adjudicated in an Indiana trial court. Bethlehem contends that this cause must be adjudicated in federal court. ERISA prescribes its jurisdiction as follows:

(a) A civil action may be brought—

(1) by a participant or beneficiary—

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

.    .    .    .    .

(3) by a participant ... (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions

of this subchapter or the terms of the plan;

. . . . .

(e)

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

(2) Where an action under this subchapter is brought in district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. . . .

29 U.S.C. § 1132. This language indicates that an Indiana state court may adjudicate the disposition of this case. ERISA § 1132(a)(1)(B) is applicable, not (a)(3) as Bethlehem argues.

 Laborers also contend that 29 U.S.C. § 1132 allows for "state court enforcement proceedings," and concludes that this means a state court may enforce any state law that assists one in recovering benefits falling under ERISA. Laborers' jurisdiction argument is specious. Section 1132(e)(1) provides that a state court may enforce the terms of ERISA. However, it does not provide that a state court may enforce ERISA under a state statute such as I.C. 32–8–3–1; ERISA must be applied as opposed to Indiana law.

For the foregoing reasons, we affirm the trial court's granting of Bethlehem's motion for summary judgment as to the fringe benefits, and we remand to the trial court for proceedings, to collect the wages, consistent with this opinion.

CONOVER and MILLER, JJ. concur.