Matthew E. BURGESS, William M. Burgess, Ronald R. Clark, Yves Dambreville, Michael Escue, Brett M. Flynn, Ronald L. Hamilton, Sr., James L. Loussaint, Christine M. Patterson, Rahman Sharief and Troy M. Whittaker, Appellants–Plaintiffs,

v.

E.L.C. ELECTRIC, INC., Appellee–Defendant.

No. 49A02–0406–CV–504.

Court of Appeals of Indiana.

March 22, 2005.

Robert S. Rifkin, Clinton E. Blanck, Maurer Rifkin & Hill, P.C., Carmel, IN, Attorneys for Appellants.

Michael L. Einterz, Indianapolis, IN, Attorney for Appellee.

Neil E. Gath, Geoffrey S. Lohman, Fillenwarth Dennerline Groth & Towe, Indianapolis, IN, Attorneys for Amicus Curiae Indiana State Building & Construction Trades Council.

Todd A. Richardson, Lewis & Kappes, Indianapolis, IN, Attorney for Amicus Curiae National Electrical Contractors Association, Central Indiana Chapter.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Department of Labor.

**OPINION**

SULLIVAN, Judge.

Appellants–Plaintiffs, Matthew Burgess, William Burgess, Ronald Clark, Yves Dambreville, Michael Escue, Brett Flynn, Ronald Hamilton, Sr., James Loussaint, Christine Patterson, Rahman Sharief, and Troy Whittaker (collectively "the Employees"), challenge the trial court's grant of summary judgment in favor of Appellee–Defendant, E.L.C. Electric, Inc. ("E.L.C."). Upon appeal, the Employees claim that the trial court erred in determining that their claims under the Indiana Common Construction Wage Act ("CCWA") are preempted by the federal Employee Retirement Income Security Act ("ERISA").

We reverse and remand.

The record reveals that defendant E.L.C. is an electrical contracting firm based in Indiana. The Employees all worked for E.L.C. at the time relevant to this appeal. E.L.C. performed work on public construction projects in Indiana. Because of this, E.L.C. falls within the ambit of Indiana Code §§ 5–16–7–1 through 5–16–7–5 (Burns Code Ed. Repl. 2001), known as the Indiana Common Construction Wage Act. *See Union Township School Corp. v. State ex rel. Joyce*, 706 N.E.2d 183, 190 (Ind.Ct.App.1998), *trans. denied*. Section 1(a) of the CCWA provides that any firm, individual, partnership, limited liability company, or corporation which is awarded a contract by the state, a political subdivision, or a municipal corporation for the construction of a public work, and any subcontractor of the construction, shall pay for each class of work described in subsection (c)(1) on the project a scale of wages that may not be less than the common construction wage. Before advertising such a contract, the "common construction wage" is determined by a committee [1] established by the awarding governmental agency in the county wherein the public works project is located. *Id.* at § 1(b). This committee meets in the county to determine a classification of the labor to be used on the project, divided into three groups: skilled, semiskilled, and unskilled labor. *Id.* at § 1(c). The committee must also determine the wage per hour to be paid to each of the classes. *Id.* For each of the three classes of wages, the wages set shall not be less than the "common construction wage[s]" that are currently being paid in the county where the project is located. *Id.* at § 1(d). The common wage determinations are not based upon the "average" wage paid but the most commonly paid wage in the community, or, in mathematical terms, the

---

1. This committee is made up of five members: a labor representative appointed by the president of the state federation of labor, an industry representative appointed by the awarding agency, a member named by the governor, a local taxpayer appointed by the owner of the project, and a taxpayer appointed by the legislative body of the county where the project is located. *Id.* at § 1(b).

"mode." *See Union Township*, 706 N.E.2d at 192, 192 n. 7. Although not explicitly defined in the text of the CCWA, it has been held that the term "wage" includes fringe benefits. *Id.* at 191.

It must be a condition of a contract awarded that the successful bidder and all subcontractors shall comply strictly with the determination of wages made under Section 1. I.C. § 5–16–7–1(h). The CCWA is applicable to projects either owned entirely or leased with an option to purchase by the state or political subdivision. *Id.* at § 1(j). However, the CCWA is generally not applicable to projects paid for in whole or in part with federal funds, nor to projects whose actual construction costs are less than $150,000. *Id.* at § 1(i), (k).

The Indiana Department of Labor ("IDOL") is charged by statute with the enforcement of Indiana's labor laws, including the CCWA. *See Union Township*, 706 N.E.2d at 188 (citing Ind.Code § 22–1–1–16 (Burns Code Ed. Repl.1997)). In 2001, E.L.C. was audited by IDOL to check its compliance with the CCWA. At the end of this audit, IDOL sent written notice to the Employees informing them that, pursuant to the CCWA, they had been underpaid for work they had performed while employed by E.L.C. on three specific public works projects. In conducting the audit, IDOL determined the amount of compensation to be paid by looking at the total compensation paid to the Employees and was not concerned with the breakdown of compensation into actual cash wages or fringe benefits. In the present case, the relevant wage committees which established the common wages did divide the prevailing wage into separate cash wage and fringe benefit components. IDOL's auditors combined the cash wage and fringe benefit compo-

nents into one sum that each of the Employees should have received. IDOL counted both ERISA plans and non-ERISA plans in calculating fringe benefits. IDOL then combined the cash wages and fringe benefits actually received by the Employees into an amount it referred to as the "Total Paid" by E.L.C. According to IDOL's audit, the total paid did not match the amount the Employees should have received, and the notices sent to the Employees listed the amount that IDOL had determined was owed to each respectively.

In response to the notice letters received from IDOL, the Employees, on October 31, 2001, filed suit against E.L.C. seeking unpaid wages, "liquidated damages," and attorney fees. On February 7, 2003, E.L.C. filed a motion for declaratory judgment asking the trial court to declare the CCWA unconstitutional. Following a hearing held on July 25, 2003, the trial court denied E.L.C.'s motion on October 3, 2003, concluding that the CCWA was not unconstitutional and that E.L.C. had not been deprived of procedural due process. E.L.C. sought permission from the trial court to file an interlocutory appeal from the decision, but the trial court denied its motion.[2]

On December 15, 2003, E.L.C. filed a combined motion to dismiss and motion for summary judgment. In this motion, E.L.C. claimed for the first time that the Employees' claims were preempted by ERISA. The Employees responded on January 12, 2004, arguing that their claims did not relate to any ERISA-based fringe benefit plans. There is no indication in the record that a hearing was held on E.L.C.'s combined motion. But on May 5, 2004, the trial court entered findings of fact and conclusions of law granting

---

2. E.L.C. does not bring a cross-appeal from the trial court's ruling upon this matter.

E.L.C.'s motion for summary judgment. The Employees filed a notice of appeal on May 26, 2004.

Summary judgment is appropriate only if the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Byrd v. Am. Fed. of State, County, & Municipal Employees, Council 62,* 781 N.E.2d 713, 718 (Ind.Ct.App.2003). Genuine issues of material fact exist where facts are in dispute concerning an issue which would dispose of the litigation. *Id.* Upon appeal, we apply the same standard as the trial court and resolve disputed facts or inferences in favor of the non-moving party. *Id.* This court and the trial court are bound to consider only those matters which were designated to the trial court. *Id.* The moving party bears the burden of establishing, prima facie, that no genuine issues of material fact exist and that he or she is entitled to judgment as a matter of law. *Id.* at 718–19. Once the moving party has met this burden, the burden falls upon the non-moving party to set forth specific facts demonstrating a genuine issue for trial. *Id.* at 719.

The non-moving party may not rest upon the pleadings but must set forth specific facts, using supporting materials contemplated under the rule, which show the existence of a genuine issue for trial. *Id.* Although the party appealing a grant of summary judgment bears the burden of persuading us that the trial court erred, we must carefully scrutinize an entry of summary judgment in order to ensure that the non-prevailing party is not denied his day in court. *See id.; Jones v. W. Reserve Group/Lightning Rod Mut. Ins. Co.,* 699 N.E.2d 711, 713 (Ind.Ct.App.1998), *trans. denied.* Here, the trial court entered specific findings and conclusions, but this does not alter our standard of review. *See Jones,* 699 N.E.2d at 714. While such findings and conclusions offer insight into the rationale for the trial court's judgment and facilitate appellate review, they are not binding upon this court. *Id.*

## ERISA

■ As observed by the Indiana Supreme Court:

"The stated purpose of ERISA is to 'protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to Federal courts.' [ ] 29 U.S.C. § 1001(b) (1998). *ERISA creates a federal statutory claim for recovery of 'benefits due to [the beneficiary] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan*[.]' [ ] 29 U.S.C. § 1132(a)(1)(B) (1994 & Supp.1997). Suits under § 1132(a)(1)(B) may be brought in either federal or state court. *Id.* § 1132(e)(1)." *Midwest Sec. Life Ins. Co. v. Stroup,* 730 N.E.2d 163, 166 (Ind.2000) (emphasis supplied).

However, ERISA does not mandate that employers provide any particular benefits. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA does contain an explicit preemption provisions which states "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a)

(2000). *See also Stroup,* 730 N.E.2d at 166.

■ In the case at bar, the Employees claim that the trial court erred in concluding that ERISA preempts the CCWA. E.L.C. contends that the trial court did not find that the CCWA was preempted by ERISA. Instead, E.L.C. claims that the trial court "disallowed the [Employees'] claims asserting a state claim where federal law only permits an ERISA claim." Appellee's Br. 8–9. In other words, E.L.C. claims that the trial court did not determine that the CCWA was preempted, but instead disallowed the Employees' claims brought under the CCWA based upon ERISA. In arguing in support of summary judgment to the trial court, E.L.C. argued that the Employees' claims were preempted by ERISA, and the trial court's order granting summary judgment agreed with this argument. To us, this is a distinction without a difference. Whether the question is framed as one of whether ERISA preempts the relevant portions of the CCWA or as whether the Employees' claims brought under the relevant portions of the CCWA[3] are preempted by ERISA, the pertinent issues remain the same.

Neither party directs us to an Indiana case directly on point, and our research has revealed none. Yet our courts have addressed ERISA preemption in several cases. Upon appeal, E.L.C. claims that the outcome of the present case is controlled by *Edwards v. Bethlehem Steel Corp.,* 554 N.E.2d 833 (Ind.Ct.App.1990). In that case, the plaintiffs were laborers who entered into a collective bargaining agreement which provided that their employer would, on their behalf, pay certain fringe benefits into three specific funds.

The employer had previously contracted to perform construction at a Bethlehem Steel plant. The employer subsequently filed for bankruptcy and did not pay certain wages and fringe benefits to the laborers. Thereafter, the laborers filed a notice of intention to hold a mechanic's lien against Bethlehem Steel and brought suit to foreclose the lien. The trial court granted summary judgment in favor of Bethlehem Steel, finding the laborers' claims preempted by ERISA. Upon appeal, the *Edwards* court agreed, concluding that the benefit funds at issue fell under ERISA provisions. *Id.* at 836. The court also concluded that the mechanic's lien statute related to ERISA in that the laborers were using the statute to "enforce conditions of their fringe benefits." *Id.* at 837. The court rejected the laborers' contention that the fringe benefits were provided as mere "benefits" and not under a "benefit plan." *Id.* After citing the relevant provisions of ERISA, the court wrote, "The 'benefits' here were provided by the employer ... and by an organization representing the employees ... pursuant to a collective bargaining agreement. The benefits were provided under a 'plan' as described in ERISA, and ERISA preempts Indiana's mechanic's lien statute." *Id.*

In a similar vein, E.L.C. contends that the Employees are "converting" a claim for unpaid fringe benefits into one for unpaid wages, and that ERISA prohibits such claims unless brought under ERISA. The Employees' complaint alleges that E.L.C. "failed to pay Plaintiffs the full amount of fringe benefits each Plaintiff was entitled to receive according to the prevailing scale of wages being paid in the immediate locality for the class of work

---

**3.** We observe that the text of the CCWA does not create a private cause of action for failure to comply with the requirements of the act. However, in *Stampco Construction Co., Inc. v.* *Guffey,* 572 N.E.2d 510 (Ind.Ct.App.1991), the majority, over the dissent of Judge Buchanan, held that such a private cause of action could be brought.

performed by each Plaintiff." Appellant's App. at 14. Although this claim does state that the Employees were not paid fringe benefits, they base their claim not upon the terms of any benefit plan, but upon the common wage the Employees were entitled to receive under the CCWA. Indeed, in their prayer for relief, the Employees requested "damages equal to the amount of unpaid wages representing the difference between the amount each Plaintiff was paid by ELC and the amount each Plaintiff should have received from ELC had he or she been paid the prevailing wage scale rate as required by statute." *Id.*

Thus, the Employees are not seeking to enforce conditions of their fringe benefits as in *Edwards, supra,* but instead claim that the total wages they were entitled to under the CCWA were not paid because they did not receive the full amount of fringe benefits E.L.C. claims to have paid them. In other words, the Employees do not seek to enforce their fringe benefits under the terms of any benefit plan, but instead seek the cash value of what they allege was owed to them based upon E.L.C.'s obligations under the CCWA.

The Employees further point out that the holding in *Edwards* was later limited by the court in *Seaboard Surety Co. v. Indiana State District Council of Laborers & Hod Carriers Health & Welfare Fund,* 645 N.E.2d 1121 (Ind.Ct.App.1995). In *Seaboard,* the plaintiffs were employee welfare benefit plans, labor organizations, and laborers employed by a subcontractor working on a wastewater treatment project. Because the project was a public work, the main contractor, pursuant to

Indiana Code § 36–1–12–13.1 (Burns Code Ed. Repl.2000), obtained payment and performance bonds from Seaboard Surety. The bonds insured the subcontractor's payment of fringe benefits contributions to its employees as required under a collective bargaining agreement. When the subcontractor defaulted on its contributions and filed for bankruptcy, the plaintiffs brought suit. The trial court concluded that the claim on the surety bond was preempted by ERISA.

Upon appeal, the *Seaboard* court reversed the trial court and held that the claims were not preempted. 645 N.E.2d at 1127–28. The court distinguished the *Edwards* case, noting that in that case the plaintiffs sought to enforce a lien against a stranger to the obligations to pay benefits and that there was a concern of double recovery. *Id.* at 1126–27. The *Seaboard* court held that although a state statute which interferes with an ERISA function is preempted, a supplemental remedy provided by state law which did not interfere with ERISA as did the suit on the bond at issue is not preempted.[4] *Id.* at 1127. "[A] state law will not automatically be preempted because it provides a supplemental remedy to collect delinquent contributions, unless the state law refers to benefit plans, singles them out for special treatment, or actually conflicts with ERISA." *Id.* The court stated, "we choose not to extend [the] holding in *Edwards* beyond its application to the mechanic's lien statute." *Id.* The court further determined that the plaintiffs' claim did not relate to an employee benefit plan because its effect was "too tenuous, remote, and peripheral" to

---

**4.** E.L.C. makes no mention of this *Seaboard* case or its effect on the holding in *Edwards.* E.L.C. does cite to *Indiana Carpenters Central and Western Indiana Pension Fund v. Seaboard Surety Co.,* 601 N.E.2d 352 (Ind.Ct.App. 1992), but provides page citations which cor-

respond with the 1995 Seaboard opinion. In any event, E.L.C.'s assertion that ERISA preempts state laws which purport to supplement employee's remedies is unsupported by either case.

warrant a finding that the claim "relate[s] to" the plan. *Id.* Key to this conclusion were that Indiana has required bonds on public works and allowed recovery against those bonds since the nineteenth century and that the bond requirement and remedy are traditional exercises of state authority. *Id.* Too, the challenged laws affected relations between the plan and a surety, not relations among the parties to the ERISA plan, and any effect on the plan itself was merely incidental, i.e. the state laws challenged did not change benefit eligibility or the way benefits are calculated. *Id.*

Here, we note that Indiana has required that employers working on public works pay a prevailing or common wage since the first half of the last century and that such is a traditional exercise of state authority. This does not support a finding of ERISA preemption. *See id.* However, unlike the laws at issue in *Seaboard*, the CCWA affects the relations between the parties to the benefit plans—the Employer, E.L.C., and the Employees as plan beneficiaries. Nevertheless, as more fully discussed below, we conclude that any effect the CCWA might have on ERISA plans is incidental in nature.

In *Stroup, supra,* our Supreme Court addressed the issue of ERISA preemption of state claims for breach of contract and bad faith. In that case, the Stroups received an ERISA-governed group health insurance policy from Midwest through Mr. Stroup's employment. Midwest approved orthognathic surgery for Mrs. Stroup to correct certain congenital problems with her jaw, but complications arose from this surgery that required another procedure shortly thereafter. Mrs. Stroup continued to have problems with her jaw following the surgeries, and non-surgical treatments were not successful. However,

four months after the second surgery, Midwest amended its plan to exclude orthognathic surgery. When Mrs. Stroup sought pre-determination for another surgery, the surgery was not considered as a continuation of the prior treatment but was instead approved under another coverage provision which limited benefits to $1,000 per year. To avoid the costs of surgery, Mrs. Stroup opted to continue non-surgical treatments. Such treatments were unsuccessful, and Mrs. Stroup's jaw eventually fractured, requiring extensive surgeries. Thereafter, the Stroups filed suit against Midwest, later amending their complaint to add claims for breach of contract and bad faith. The trial court held that the claims were not preempted by ERISA, and upon interlocutory appeal, the Court of Appeals reversed.[5]

Upon transfer, our Supreme Court held that the Stroups's claims were preempted. *Stroup,* 730 N.E.2d at 167. Specifically, the court determined that the claims clearly "relate[d] to" employee benefit plans, and therefore fell within the "broad preemption" provisions of ERISA:

> "These claims are based on Midwest's failure to pay benefits due under an ERISA-governed pension plan. The complaint asks for damages for breach of the insurance contract and for punitive and compensatory damages for the tort of bad faith based on Midwest's denial of coverage under the insurance contract. The claims clearly have connection with and refer to the ERISA plan.
>
> The essence of the claims is a failure to supply benefits under the plan.... Just as in *Ingersoll-Rand* [*Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) ], 'there sim-

5. *See Midwest Sec. Life Ins. Co. v. Stroup,* 706 N.E.2d 201 (Ind.Ct.App.1999), *trans. granted.*

ply is no cause of action if there is no plan.'" *Id.* at 166–67, 111 S.Ct. 478.

Here, we are unable to say that if there is no plan, there is no cause of action; the essence of the claim is not the failure to pay benefits due under the terms of any plan, but the failure to make up any obligation under the CCWA in cash. *See id.* at 167, 730 N.E.2d 163. The CCWA operates irrespective of ERISA, and there could be a cause of action whether there was no benefits plan, an ERISA-plan, or a non-ERISA plan. *Cf. WSB Elec., Inc. v. Curry,* 88 F.3d 788, 793 (9th Cir.1996) (state prevailing wage statute not preempted by ERISA where prevailing wage was measured by reference to employer's fringe benefits, but such costs were calculated without regard to whether they consisted of contributions to ERISA plans and the employer's obligations to pay the prevailing wage did not depend upon the existence or operation of ERISA plans).

■ Since there are no controlling Indiana cases, we look to other jurisdictions for guidance. In doing so, we note that decisions of the United States Supreme Court pertaining to federal issues are binding on state courts but that decisions of lower federal courts, although they may be persuasive, are not binding upon state courts. *Ind. Dep't of Pub. Welfare v. Payne,* 622 N.E.2d 461, 468 (Ind.1993).

■ In *California Division of Labor Standards Enforcement v. Dillingham Construction N.A., Inc.,* 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), the United States Supreme Court explained that, since the enactment of ERISA, the Court has "endeavored with some regularity to interpret and apply the 'unhelpful text' of ERISA's pre-emption provision." The Court had long acknowledged that ERISA's preemption provision is "clearly expansive," has a "broad scope," an "expansive sweep," and that it is "broadly worded," "deliberately expansive," and "conspicuous for its breadth." *Id.* (citations and internal quotations omitted). The Court's efforts in applying the pre-emption provision have yielded a two-part inquiry: a law relates to a covered employee benefit plan for purposes of ERISA's preemption provision if it (1) has a connection with or (2) reference to such a plan. *Id.*

Although earlier decisions liberally interpreted this test and portrayed the scope of ERISA preemption as clearly expansive, more recent Court decisions have been more restrictive. *See State v. Phillips,* 238 Wis.2d 279, 617 N.W.2d 522, 527 (Ct.App. 2000).[6] Thus, the Court has held that where a State's law acts "immediately and

**6.** As noted by the Wisconsin Court of Appeals in *Phillips,* Justice Scalia, joined by Justice Ginsburg, wrote separately in *Dillingham* to state that ERISA preemption should be governed by traditional concepts of field preemption and conflict preemption. 617 N.W.2d at 527 n. 4 (citing *Dillingham,* 519 U.S. at 336, 117 S.Ct. 832 (Scalia, J., concurring)). The *Dillingham* majority nevertheless applied the two-part test for ERISA preemption. 519 U.S. at 324, 117 S.Ct. 832. However, as further noted in *Phillips,* the Court in *Boggs v. Boggs,* 520 U.S. 833, 841, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997), decided the same term as *Dillingham,* seemed to further distance itself from the ERISA-specific tests for preemption and applied conflict preemption principles to decide the case. 617 N.W.2d at 527 n. 4. Indeed, the *Boggs* Court went so far as to say, "We hold that there is a conflict, which suffices to resolve the case. We need not inquire whether the statutory phrase 'relate to' provides further and additional support for the pre-emption claim. Nor need we consider the applicability of field pre-emption." 520 U.S. at 841, 117 S.Ct. 1754. But because the Supreme Court has not explicitly abandoned the two-part analysis, we will apply this test. *See Phillips,* 617 N.W.2d at 527 n. 4.

exclusively" upon ERISA plans, or where the existence of ERISA plans is essential to the law's operation, that "reference" will result in preemption.[7] *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832. (citations omitted).

Here, we are convinced that the CCWA does not "refer to" ERISA or ERISA plans. The text of the CCWA makes no mention of ERISA or fringe benefits of any type. Indeed, fringe benefits are considered as a "wage" under the CCWA only pursuant to case law. *See Union Township*, 706 N.E.2d at 191. Our General Assembly enacted a prevailing wage law decades before the enactment of ERISA. Moreover, the designated evidence favoring the Employees reveals that in applying the CCWA during the audit of E.L.C.'s compliance with the CCWA, IDOL was indifferent to whether an employer's obligations under the CCWA was met through cash payments, contributions toward non-ERISA benefits, or contributions toward ERISA-governed benefit plans.

Although IDOL's interpretation of the law is not binding upon this court,[8] we do agree that neither the CCWA nor the definition of "wage" as interpreted by case law makes any distinction between cash payments or fringe benefits. As explained by the court in *Union Township*, a

"wage" for purposes of the CCWA includes:

> " 'Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him.

> [The] term should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to the manner in which such compensation is computed.' " 706 N.E.2d at 191 (quoting *Johnson v. Wiley*, 613 N.E.2d 446, 450 n. 3 (Ind.Ct.App.1993)).[9]

This definition makes no distinction between cash payments, fringe benefits governed by ERISA, or fringe benefits not governed by ERISA. Instead, it includes all compensation for services rendered.

Thus, it cannot be said that the CCWA acts immediately or exclusively upon ERISA. *See Dillingham*, 519 U.S. at 325, 117 S.Ct. 832. Moreover, it has been held that a statute "refers to" ERISA if it mentions or alludes to ERISA plans *and* has some effect on the referenced plans.

---

7. Under this "reference to" prong of the test, the Supreme Court has held preempted a law that imposed requirements by reference to ERISA-covered programs, a law that specifically exempted ERISA plans from an otherwise generally applicable garnishment provision, and a common-law cause of action premised on the existence of an ERISA plan. *Id.* at 324–25, 117 S.Ct. 832 (citations omitted).

8. When an appeal involves an agency's determination of a question of law, we are not bound by that agency's interpretation of the law, but rather we determine whether the agency correctly interpreted and applied the

law. *Miller Brewing Co. v. Bartholemew County Beverage Co., Inc.*, 674 N.E.2d 193, 200 (Ind.Ct.App.1996). Although an agency's interpretation of the statutes and regulations which the agency is charged to enforce is entitled to some weight, if an agency's interpretation is erroneous, it is entitled to no weight. *Id.* Ultimately, however, we are charged with the responsibility of resolving questions of statutory interpretation and thus are not bound by an agency's interpretation of a statute or rule. *Id.*

9. The *Johnson* court was in turn quoting from Black's Law Dictionary 1579 (6th ed. 1990).

*Curry*, 88 F.3d at 793. Like the California prevailing wage scheme at issue in *Curry*, the CCWA does not force employers to provide any particular benefit or benefit plan, alter any existing plan, or even provide ERISA-governed benefit plans at all. *See id.* It simply requires employers working on public works projects to pay common wages, and this obligation can be met through any form of compensation for services rendered, including fringe benefits.

■ However, a law which does not "refer to" ERISA may yet be preempted by ERISA if it has a "connection with" ERISA plans. *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832. To determine whether a state law has the forbidden "connection with" ERISA plans, courts must look to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as the nature of the effect of the state law on ERISA plans. *Id.* (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658–59, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). As noted in *Dillingham*, the Court in *Travelers* had previously recognized that "an 'uncritical literalism' in applying this standard offered scant utility in determining Congress' intent as to the extent of [ERISA's preemption provision]'s reach." *Id.* at 325, 117 S.Ct. 832 (quoting *Travelers*, 514 U.S. at 656, 115 S.Ct. 1671). Nevertheless, the Court has emphasized that in preemption jurisprudence, where "federal law is said to bar state action in fields of traditional state regulation, . . . we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Travelers*, 514 U.S. at 655, 115 S.Ct. 1671 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218,

230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). *Accord Dillingham*, 519 U.S. at 331, 117 S.Ct. 832 (addressing the "connection with" test with the presumption that ERISA did not intend to supplant the California statute at issue).

Here, wage regulation is clearly an area within the historic police powers of the states. *See Dillingham*, 519 U.S. at 330, 117 S.Ct. 832 ("the wages paid on state public works have long been regulated by the States."). Indeed, Indiana has regulated wages paid on public works projects for seventy years. However, that the State has regulated this area does not, of itself, immunize its efforts from the effects of ERISA preemption. *See id.* Nevertheless, "[t]he wages to be paid on public works projects . . . are . . . quite remote from the areas with which ERISA is expressly concerned—'reporting, disclosure, fiduciary responsibility, and the like.'" *Id.* (quoting *Travelers*, 514 U.S. at 661, 115 S.Ct. 1671). A reading of ERISA's preemption provision resulting in the preemption of traditionally state-regulated substantive law in those areas where ERISA is silent would be "'unsettling.'" *Id.* (quoting *Travelers*, 514 U.S. at 665, 115 S.Ct. 1671). As the *Dillingham* Court concluded:

> "Given the paucity of indication in ERISA and its legislative history of any intent on the part of Congress to preempt state apprenticeship training standards, *or state prevailing wage laws that incorporate them,* we are reluctant to alter our ordinary assumption that the historic police powers of the States were not to be superseded by the Federal Act. Accordingly, as in *Travelers,* we address the substance of the California statute with the presumption that ERISA did not intend to supplant it." 519 U.S. at 331, 117 S.Ct. 832. (emphasis supplied) (citations and internal quotations omitted).

The *Dillingham* Court contrasted a case in which the state laws at issue were found to have a "connection with" ERISA with one in which the state law was not found to have such a connection. In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court held that the New York Human Rights Law, which prohibited employers from structuring their employee benefit plans in a manner that discriminated against pregnant women, and New York's Disability Benefits Law, which required employers to pay employees specific benefits, were preempted by ERISA. The *Dillingham* Court stated that *Shaw,* and other cases where preemption was found, involved state statutes which mandated employee benefit structures or their administration, and that such requirements amounted to a "connection with" ERISA plans. 519 U.S. at 328, 117 S.Ct. 832.

In contrast, in *Travelers, supra,* the state statute at issue regulated hospital rates and required hospitals to exact surcharges from patients whose hospital bills were paid by certain insurance providers not associated with Blue Cross/Blue Shield. Because ERISA plans were among the purchasers of insurance, the statute was claimed to invoke ERISA preemption. The proponents of preemption argued that the differential rates charged made non-Blue Cross insurance coverage more expensive and less attractive. Therefore, insurance purchasers, including ERISA plans, were encouraged to purchase coverage through Blue Cross. The *Travelers* Court upheld the statute, finding no preemption. 514 U.S. at 659, 115 S.Ct. 1671. The "indirect economic influence" of the statute did not bind plan administrators to any particular choice and thus did not act as a regulation of an ERISA plan. *Id.* Nor did the indirect influence preclude uniform administrative practice or the provision of a uniform interstate plan if

a such plan was desired. *Id.* at 660, 115 S.Ct. 1671. Thus, the *Dillingham* Court wrote:

> "Indeed if ERISA were concerned with any state action—such as medical-care quality standards or hospital workplace regulations—that increased the costs of providing certain benefits, and thereby potentially affected the choices made by ERISA plans, we could scarcely see the end of ERISA's pre-emptive reach, and the words 'relate to' would limit nothing." 519 U.S. at 329, 117 S.Ct. 832.

Based upon this Supreme Court precedent, we are unable to conclude in the present case that the CCWA has a "connection with" ERISA for purposes of federal preemption. Although our issue was not the precise issue before it, the *Dillingham* Court stated that there was little indication in ERISA that Congress intended to preempt state apprenticeship laws *"or the state prevailing wage laws that incorporate them."* 519 U.S. at 331, 117 S.Ct. 832 (emphasis supplied). The wages to be paid on public works projects are quite remote from the areas with which ERISA is expressly concerned. *Id.* at 330, 117 S.Ct. 832. Unlike the state law at issue in *Shaw,* the CCWA does not mandate how employee benefit plans must be structured or administered. In short, we conclude that the CCWA does not have a "connection with" ERISA or ERISA plans sufficient to warrant preemption.

Several lower federal courts and state courts have considered the relationship between ERISA and state prevailing wage laws and come to a similar conclusion. *See Minnesota Chapter of Associated Builders & Contractors, Inc. v. Minnesota Dep't of Labor & Indus.,* 47 F.3d 975 (8th Cir.1995) (prevailing wage law not preempted by ERISA where it did not require employer to provide any level of benefit and only

affected benefit plans to the extent that the employer chose to include benefits as part of the wage); *Keystone Chapter, Associated Builders & Contractors, Inc. v. Foley,* 37 F.3d 945 (3d Cir.1994) (ERISA did not preempt state prevailing wage law where that law did not single out ERISA plans for special treatment or even refer to such plans, and in the absence of ERISA, the wage law could be meaningfully applied), *cert. denied* 514 U.S. 1032, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995); *Phillips,* 238 Wis.2d 279, 617 N.W.2d 522 (state prevailing wage law did not reference ERISA sufficient to warrant preemption because the existence of ERISA plans was not essential to the law's operation); *Felix A. Marino Co., Inc. v. Comm'r of Labor & Indus.,* 426 Mass. 458, 689 N.E.2d 495 (1998) (no ERISA preemption of state prevailing wage law where law did not act immediately and exclusively on ERISA plans or depend on existence of such plans); *Ironworkers Dist. Council of the Pac. Northwest v. Woodland Park Zoo Planning & Dev.,* 87 Wash.App. 676, 942 P.2d 1054 (1997) (state prevailing wage law was not preempted by ERISA where the total prevailing wage included a benefits component, but employers were not required to establish benefits programs).[10]

The Second Circuit in *General Electric Co. v. New York State Department of Labor,* 891 F.2d 25 (2d Cir.1989), *cert. denied* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990), held that New York's prevailing wage law as then enforced was preempted by ERISA. Specifically, the State followed a "line-item" approach whereby the Commissioner of the Department of Labor prescribed prevailing benefit levels for each individual type of wage supplement.[11] *Id.* at 26–27; *Burgio & Campofelice, Inc. v. N.Y. State Dep't of Labor,* 107 F.3d 1000, 1003 (2d Cir.1997). Where the employer did not provide wage supplements at the required level, the wage law required the employer to either bring the cost of its prescribed benefit up to the local prevailing level or pay the additional costs directly in cash. The *General Electric* court held that this violated ERISA because the employer was required "to make continuous calculations, adjustments and payments" and that such burdens violated the purpose of ERISA. 891 F.2d at 29.

We observe, however, that *General Electric* was decided before the U.S. Supreme Court began to reign in the expansive scope of ERISA preemption. Also, the Ninth Circuit in *Curry, supra,* held that it is not enough that a state law impose

10. We also note, albeit parenthetically, that Judge Miller of the United States District Court for the Northern District of Indiana came to a similar conclusion in an unpublished memorandum order in *Boatman v. Dilling Mechanical Contractors, Inc.,* 1993 WL 463229 (N.D.Ind.1993). In the order, Judge Miller concluded that ERISA did not preempt the plaintiffs' claims for unpaid wages under the CCWA, and thus the defendant did not have a right to remove the case to federal court. In support of this decision, the court noted that, on its face, the CCWA made no reference to any employee benefit plans, but merely required the establishment of minimum hourly wages and did not regulate pensions or insurance benefit levels. *Id.* at *2. Despite the fact that the complaint

made reference to unpaid health insurance and pension benefits, the court noted that the request for relief was limited to a claim for unpaid wages. *Id.* at *2–3. Therefore, the complaint was not a complaint about the pensions and did not trigger ERISA preemption and the defendant's right to removal. *Id.* at *3.

11. These wage supplements were defined to include "all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not 'wages' within the meaning of the law...." *General Electric,* 891 F.2d at 27.

additional administrative burdens regarding benefit contributions upon the employer. *See* 88 F.3d at 795. Instead, the additional administrative burdens must be placed on the ERISA plan. *Id.*

More importantly, in *Burgio, supra,* the Second Circuit distinguished the *General Electric* holding. By the time of the *Burgio* opinion, New York had abandoned the "line-item" approach and now simply required employers to match the total costs of all the prevailing supplements. 107 F.3d at 1004. Employers were no longer required to match one-for-one the specific prevailing rate for each individual supplement, or even provide that type of supplement. *Id.* Instead, employers were simply required to match the total costs of all prevailing supplements. *Id.* As the court wrote, "[the employer]'s total liability would thus be the same whether the subcontractor had bargained to provide benefits exclusively through ERISA plans, exclusively through non-ERISA plans, through additional cash wages, or through some combination of the three." *Id.* at 1009.

The same can be said of the Indiana scheme. The CCWA merely requires that the specified common wage be paid, and the employer's obligation may be met through any form of remuneration, including wages and fringe benefits. *See Union Township,* 706 N.E.2d at 191. The Second Circuit reaffirmed its position in *HMI Mechanical Systems, Inc. v. McGowan,* 266 F.3d 142, 151 (2d Cir.2001), holding that ERISA did not preempt the New York prevailing wage scheme where the state sought to examine total contributions and

in no way required employers to make particular contributions to an ERISA plan, and the state was not examining employer contributions on a benefit by benefit basis.[12] *Cf. Dillingham,* 519 U.S. at 327–28, 117 S.Ct. 832 (holding that California's prevailing wage act did not refer to ERISA where the act required payment of prevailing wages to workers in apprenticeship programs that had not received state approval but allowed payment of lower wages to workers in approved apprenticeship programs because the statute functioned irrespective of the existence of an ERISA plan and was indifferent to the funding of apprenticeship programs).

E.L.C. also argues that, in determining the value of the fringe benefits given to E.L.C.'s employees, IDOL apparently "disallowed" some of the associated expenses which E.L.C. claims should be counted in determining the cost of the fringe benefits it paid. Specifically, E.L.C. claims that IDOL disallowed certain costs associated with self-administration of the fringe benefits. First, we note that E.L.C. does not explain what it means in claiming that ERISA would "allow" such expenses. E.L.C. cites no provision in ERISA which would require that specific administrative expenses be counted towards an employer's common wage obligations.

Furthermore, we again state that IDOL's determinations of law are not binding upon courts. Indeed, as the trial court concluded in denying E.L.C.'s motion for a declaratory judgment, which neither party challenges upon appeal:

**12.** We recognize that there are some courts which have held that state prevailing wage laws were preempted. *See, e.g., City of Des Moines v. Master Builders of Iowa,* 498 N.W.2d 702 (Iowa 1993); *Constr. & Gen. Laborer's Distr. Council of Chicago v. James McHugh Constr. Co.,* 230 Ill.App.3d 939, 172 Ill.Dec. 740, 596 N.E.2d 19 (1992). However, although we might factually distinguish these cases, we simply decline to adopt the approach of these cases, concluding that the federal and state cases cited above better represent modern ERISA preemption jurisprudence.

"26. The opinions issued by [IDOL] at the conclusion of the audit process do not affect the legal rights of the employers. Rather, opinion letters are issued pursuant to [IDOL]'s statutory duty to inspect records and communicate its findings in order to monitor and ensure compliance with the labor laws.

27. The letters to employees do not grant employees the right to sue. The letters are advisory only, and thus they do not constitute administrative decisions from which there is a right to an administrative appeal." Appellant's App. at 218 (citations omitted).

If the letters and opinions of IDOL are not binding, then IDOL's "disallowance" of certain expenses during the audit do not appear to be grounds for ERISA preemption of the Employees' claims. However, the Employees do appear to base their claims upon the same reasoning as used by IDOL during the audit.

So far as we are able to determine, E.L.C. argues that IDOL's enforcement of the CCWA places additional administrative burdens and costs upon it, allegedly in violation of ERISA. The trial court apparently accepted this argument, stating in the order granting summary judgment, "ERISA prohibits state regulations or a state action that places administrative burdens and costs on ERISA plans maintained by E.L.C. Electric, Inc." Appellant's App. at 11. One of the authorities cited for this contention is *Keystone*, 37 F.3d at 959 n. 19, where the court stated, "While state regulations may affect the cost of doing business in a state, they may not, consistent with ERISA, place adminis-trative burdens and costs on ERISA plans that make it impractical for an employer to provide a nationwide plan."

A state law may be preempted by ERISA if it imposes additional administrative requirements for ERISA plans. *See Curry*, 88 F.3d at 795. Here, to the extent that E.L.C. argues that IDOL's interpretation of the CCWA imposes additional administrative requirements, we disagree. It is not enough that the state law impose additional administrative burdens regarding benefits contributions on the employer. *See id.* E.L.C. has designated no evidence that *it* is an ERISA plan administrator. An employee benefit program that is not funded through a separate fund, but is instead paid out of an employer's general assets, is not an ERISA plan. *See Dillingham*, 519 U.S. at 326, 117 S.Ct. 832. We therefore reject E.L.C.'s claims regarding the imposition of administrative burdens.[13]

In essence, the Employees claim that E.L.C., by not paying to them certain fringe benefits E.L.C. claimed to have paid, owed the Employees cash wages based upon the common wages established pursuant to the CCWA. E.L.C. claims that the money it spent should count towards its wage obligations. We agree with the argument of the amici curiae that to the extent that E.L.C. disagrees with IDOL's audit results, it should have the opportunity to challenge such findings at trial when it comes to determining how much, if any, unpaid wages E.L.C. owes the Employees.[14] *See* Brief of Amicus Curiae Indiana State Building and Construc-

---

13. E.L.C. also claims that the type of expenses IDOL disallowed in the audit of E.L.C. have been allowed in audits of other companies. E.L.C. never fully develops this argument, and we fail to see how this could be grounds for ERISA preemption of the Employees' claims.

14. Of course, in determining this factual issue, the trial court will be bound not to use any method which would conflict with ERISA.

tion Trades Council at 15–16; Brief of Amicus Curiae Indiana Department of Labor at 17.

In conclusion, the CCWA, and the Employees' claims based thereon, are neither "connected with" nor "refer to" ERISA in such a manner as to warrant application of ERISA's preemption provision. The trial court erred in concluding otherwise. To the extent that E.L.C. claims that it did not receive proper credit for certain expenses in IDOL's audit, this is an issue which should be resolved at trial.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

NAJAM, J., and BARNES, J., concur.