Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 20 2014, 6:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CLIFFORD M. DAVENPORT**
Davenport Law Offices
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY ZOELLER**
Attorney General of Indiana

**RICHARD WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ARON SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A05-1403-CR-119 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-0810-FB-583

**November 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

STATEMENT OF THE CASE

Aron Smith appeals the revocation of his probation, and the sentence imposed thereon. We affirm.

ISSUES

Smith raises two issues:

I.   Whether there is sufficient evidence to support the revocation; and

II.  Whether the trial court erred in ordering Smith to serve the entire term of his suspended sentence.

FACTS AND PROCEDURAL HISTORY

In December 2008, Smith pleaded guilty to Class B felony burglary and Class D felony theft. In January 2009, the trial court sentenced him to ten years, with eight years executed and two years suspended on probation, for the Class B felony, and eighteen months, the entire sentence suspended on probation, for the Class D felony. The trial court further ordered the sentences to run concurrently.

In January 2014, the State filed a Notice of Violation of Probation alleging that Smith violated his probation by committing the following criminal offenses: 1) battery by means of a deadly weapon; 2) domestic battery committed in the presence of a child less than sixteen; 3) strangulation; and 4) battery resulting in bodily injury. Testimony at the February 2014 revocation hearing revealed that on January 1, 2014, Elwood Police Department Lieutenant Andy McGuire was dispatched to a home with the report of a female on the ground with blood coming out of her mouth. When he arrived at the house, Lieutenant McGuire found the victim on the ground in a fetal position. She was crying and

bleeding. Her right eye was nearly swollen shut, her mouth was bleeding, and she had red marks around her neck. The victim told the detective that Smith "beat [her] up." Tr. p. 36.

Lieutenant McGuire visited the victim at the hospital the following day. The lieutenant noticed that the victim's face was much more swollen than it had been the night before. Bruising and fingerprint marks around her neck were more pronounced, and it was hard for her to talk because her throat was so swollen. The victim told the lieutenant that she was in "extreme pain." *Id.* at 38.

Elwood Police Department Officer Bret Chambers, who knew the victim prior to her hospitalization, also visited the victim at the hospital the following day. He testified that her face was so badly beaten that he did not recognize her. After Smith was picked up and brought into the Elwood Police Department, Officer Chambers noticed that Smith's tennis shoes, blue jeans, and white t-shirt had red or brown stains, which were consistent with blood stains. Smith told Officer Chambers that the victim "did it to herself . . . ." *Id.* at 51.

The victim, who was still in a relationship with Smith at the time of the revocation hearing, remembered going with Smith to a friend's house on New Year's Eve and sharing a three-fifths bottle of Jager with Smith. She didn't remember what happened after she and Smith left the friend's house. Her next recollection was waking up in the hospital. She "guess[ed]" it was Smith who brutally beat her because she was not with anyone else that night. *Id.* at 42. On cross-examination, the victim testified that Smith was "not that person that would do something like this. . . . I am sure we were both on each other." *Id.* at 44. She stated that she didn't know who beat her. On re-direct examination, the victim

3

conceded that if she told Lieutenant McGuire that Smith "grabbed [her] out of the van and bashed [her] face into the side of the van," it was probably true. *Id.* at 46.

At the conclusion of the hearing, the trial court found that Smith had violated the terms and conditions of his probation by a preponderance of the evidence. The trial court revoked Smith's probation and ordered him to serve the entire term of his suspended sentence. Smith appeals the revocation of his probation and the imposition of the entire term of his suspended sentence.

## DISCUSSION AND DECISION

### I. Revocation of Probation

Smith first argues that there is insufficient evidence to support the revocation of his probation. A probation revocation hearing is civil in nature, and the alleged violation must be proven by the State by a preponderance of the evidence. *Mateyko v. State*, 901 N.E.2d 554, 558 (Ind. Ct. App. 2009), *trans. denied*. When reviewing a claim of insufficient evidence to support a trial court's decision to revoke probation, we consider only the evidence most favorable to the judgment, and we neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Revocation is appropriate if there is substantial evidence of probative value to support the trial court's conclusion that the probationer has violated the terms of his probation. *Lightcap v. State*, 863 N.E.2d 907, 911 (Ind. Ct. App. 2007).

Where a defendant is alleged to have violated probation by committing a new offense, the State need not show that the defendant was convicted of a crime to support the revocation. *Id.* "Although an arrest standing alone does not necessarily support a revocation of probation, where there is evidence submitted at the hearing from which the

4

trial court could find that an arrest was reasonable and that there is probable cause for belief that the defendant violated a criminal law, revocation of probation is permitted." *Id.*

Here, Smith argues that the State presented insufficient evidence to establish that he committed the new offenses because the testimony against him was not credible. In other words, Smith invites us to reweigh the evidence and judge the credibility of witnesses, which we will not do. Our review of the evidence reveals that when Lieutenant McGuire arrived on the scene, he found the victim on the ground in a fetal position. Her eye was nearly swollen shut, her mouth was bleeding, and she had red marks around her neck. She told the lieutenant that Smith "beat [her] up." Tr. p. 36. The following day, Smith was brought in to the police station wearing shoes and clothes with stains that were consistent with blood. He told Officer Chambers that the victim "did it to herself." *Id.* at 51.

At the revocation hearing, the victim, who was still dating Smith, initially testified that she "guessed" it was Smith who beat her because she was not with anyone else that night. On cross-examination, the victim stated she did not know who beat her. However, on re-direct examination, she conceded that if she told Lieutenant McGuire that Smith "grabbed [her] out of the van and bashed [her] face into the side of the van," it was probably true. *Id.* at 46. This evidence is sufficient to support the revocation of Smith's probation.

## II.    Sentence

Smith also argues that the trial court erred in ordering him to serve the entire term of his previously suspended sentence. We review a trial court's sentencing decision following a revocation of probation for an abuse of discretion. *Sanders v. State*, 825 N.E.2d

5

952, 957 (Ind. Ct. App. 2005), *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Figures v. State*, 920 N.E.2d 267, 271 (Ind. Ct. App. 2010). If the trial court finds that a probationer has violated a condition of probation, the court may order execution of all or part of the sentence that was suspended. Ind. Code § 35-28-2-3(g)(3).

Here, our review of the evidence reveals that the trial court revoked Smith's probation after Smith brutally beat the victim after spending New Year's Eve drinking a three-fifth's bottle of Jager with her. The victim's eye was nearly swollen shut, her mouth was bleeding, she had fingerprints and bruises around her neck, and it was hard for her to talk because her throat was so swollen. Based upon the foregoing, the trial court did not err in ordering Smith to serve the entire term of his suspended sentence. *See Rosa v.State*, 832 N.E.2d 1119, 1121 (Ind. Ct. App. 2005) (holding that when the trial court finds that the defendant has violated probation, it may order the defendant to serve any part of the sentence that was suspended).

Affirmed.

VAIDIK, C.J., and PYLE, J., concur.